SAVANNAH, FLORIDA & WESTERN RY. CO. *v.* SLOAT BROS.

Loss of goods by a wrong delivery, made negligently by the carrier, is a conversion for which the carrier is liable to account at the full value of the goods, this mode of loss not being within the terms of the special contract fixing a conventional value upon the goods at the time of shipment in consideration of the rate of freight being reduced. Even granting that it was competent for the parties to make a contract which would have covered wrong delivery by negligence, they did not do so.

April 23, 1894. Argued at the last term.

Action for damages. Before Judge HANSELL. Lowndes superior court. May term, 1894.

An action was brought by the consignee of a barrel of whisky which had been shipped from Baltimore, Maryland, to Valdosta, Georgia, against the terminal carrier. The facts were agreed on, and the case submitted to the judge without a jury, the issue being whether the defendant could be held liable to the plaintiff for more than $20 and the freight charges on the whisky, it having made a continuing tender of those two amounts. Judgment was rendered in favor of plaintiff

for $100, the value of the whisky; and defendant excepted.

The shipper was a liquor house doing business in Baltimore, to whom, among others, the various transportation lines leading out of that city delivered blank bills of lading which were filled in by the shippers in that city, according as they might desire to ship under information furnished them by said transportation lines in book form entitled "How to Ship." In this book of instructions is a classification of all articles usually transported by the lines leading out of Baltimore, and the rate in dollars and cents to all principal points south, including Valdosta. In this book whisky in wood was put, at the date of the shipment, in second class when it was to be shipped without any limitation of the liability of the carrier, in third class when it was to be shipped "released," and in class H when it was to be shipped under the following terms printed in the book: "Liquors . . . in wood, . . value limited to 75c. per gallon, and so indorsed on bill of lading. In all cases where limitation of value is expressed in the classification, it must be written out or stamped in full upon the bills of lading, and shippers must be required to accept in writing the limitations expressed. Agents must respect this, and require acceptance by the shipper." The rate per 100 pounds was given at $1.19 on second class, $1.02 on third class, 67½ cents on class H.

According to his custom and from information derived from said book, the shipper filled in all the written part of the original bill of lading, except the signature of the agent of the initial carrier and the figures 67 & 1-2, which were written by said agent. The shipper also stamped on the bill of lading, " $20 per bbl. valuation, released," which words entered into and became a part of the contract of affreightment between the shipper and the carrier, and were mutually understood by them

to mean, that in case of the total loss of the barrel of whisky, the carrier should be liable only for $20. Upon shipping, the shipper drew on the consignee for the price of the whisky, attached the draft to the bill of lading (which was made out to his order, with direction to notify the consignee), and sent forward the papers for collection. The draft was paid by the consignee on presentation, and he then presented the bill of lading to the defendant, paid the freight and demanded the whisky, which was supposed to be in the warehouse at Valdosta but in fact was not. It was not delivered to the consignee. It was received by defendant from its connection at Savannah, was started to Valdosta on one of its trains, and, by mistake of the conductor in charge of the train, was delivered at a flag-station to a person from whom defendant has never been able to recover it; this wrong delivery not being chargeable to the consignee, but owing entirely to the negligence of the conductor.

The shipper's name was indorsed on the bill of lading, which acknowledged receipt of the whisky to be transported by steamship to the wharf of the initial carrier at Portsmouth, Virginia, and there to be delivered to connecting railroad or water line, and so on by one connecting line to another until it reached the station nearest to ultimate destination. "Each carrier, subject to the limitations and exceptions contained in this contract, shall be bound to deliver said goods in the same order and condition as that in which it received them, and the ultimate carrier to deliver them at its station or wharf to the consignee or his assigns, if called for by them or him, as in this contract provided, he or they paying freight and charges thereon. . . . It is mutually agreed that the liability of each carrier as to goods destined beyond its own route, shall be terminated by proper delivery of them to the next succeeding carrier. . . . In case of loss, detriment or damage to

the goods, or delay in the transportation thereof, imposing any liability hereunder, the transportation company or carrier in whose actual custody they were at the time of such loss, damage, detriment or delay, shall alone be responsible therefor. . . . The acceptance of this bill of lading is an agreement on the part of the shipper, owner and consignee of the goods, to abide by all its stipulations, exceptions and conditions, as fully as if they were all signed by the shipper, owner and consignee. This bill of lading is signed for the different carriers who may engage in the transportation, severally but not jointly, and each of them is to be bound by and have the benefit of all the provisions thereof as if signed by it, the shipper, owner and consignee. This bill of lading shall have the effect of a special contract, not liable to be modified by any receipt from or act of an intermediate carrier."

S. T. KINGSBERY and WILKINSON & CRANFORD, for plaintiff in error. W. H. GRIFFIN, *contra.*

LUMPKIN, Justice.

This was an action against the railway company for the recovery of the full value of a barrel of whisky it had failed to deliver to the consignees. The material portions of the contract under which the whisky was shipped appear in the reporter's statement, which also sets forth the facts necessary to an understanding of this case. The delivery of the whisky by the defendant company at a flag-station, and to a person to whom it was not consigned, was grossly negligent, and this was fully conceded by counsel for the company. Indeed, this wrong delivery, which occasioned to the plaintiffs a total loss of their goods, was neither more nor less than a conversion by the carrier, and makes it liable for the full value of the goods.

We have very carefully examined the special contract

under which the whisky was shipped. Although it fixes upon the goods a valuation less than their real market value, which stipulation the shipper agreed to in consideration of the rate of freight being reduced, there is nothing in its terms which would relieve the carrier from damages occasioned by its own negligence in making a wrong delivery. Granting that it was competent for this to be done, it is enough to say that in the present case it was not even attempted. Among the numerous stipulations in the contract of shipment, special attention is called to the following: "Negligence shall not be presumed as against any carrier under this bill of lading, and no liability shall exist therefor, without actual and affirmative proof thereof." It will thus be seen that the contracting carrier which issued the bill of lading in behalf of itself and all other carriers which might be concerned in the transportation, contemplated liability from the carrier's negligence, and only provided that negligence should not be presumed but should be positively proved.

As will appear from what has been said above, the question as to whether a carrier may lawfully contract against liabilities for injuries or damages caused by its own negligence, is not presented by the facts of the present case. We have accordingly refrained from entering unnecessarily upon a discussion of this question. It may be incidentally remarked, however, that in the case of *Georgia Railroad & Banking Company* v. *Reid*, 91 *Ga.* 377, 17 S. E. Rep. 934, cited and relied on by counsel for the plaintiff in error, no such issue was either raised or passed upon, nor was there any negligence on the part of the carrier affirmatively shown. Neither do we now recall any decision by this court rendered in a case where the contract was signed by the shipper, in which the question has been directly made and passed upon. In the cases of *Berry et al.* v. *Cooper et al., ex'rs*, 28 *Ga.*

543, *Purcell* v. *So. Ex. Co.*, 34 *Ga.* 315, and *Georgia R. R. Co.* v. *Gann & Reaves*, 68 *Ga.* 350, it does not appear that any one of the contracts under which the shipments were made was signed by the shipper. In *Central R. R. Co.* v. *Pickett & Blair*, 87 *Ga.*, the writer, on page 737, remarked offhand that "No railroad company can lawfully contract against liability for injuries caused by its own negligence," and added, "and defendant did not attempt to do so in this case." So the question was not really involved in that case. Should it hereafter arise, this court will, after full investigation and careful consideration, undertake its definite and authoritative solution.                                    *Judgment affirmed.*