## CENTRAL OF GEORGIA RAILWAY COMPANY *v.*
## MURPHEY & HUNT (two cases).

1. A railway company in its capacity as a common carrier may, as the basis for fixing its charges and limiting the amount of its corresponding liability, lawfully make with a shipper a contract of affreightment embracing an actual and bona fide agreement as to the value of the property to be transported ; and in such case the latter, when loss, damage, or destruction occurs, will be bound by the "agreed valuation." But a mere general limitation as to value, expressed in a bill of lading, and amounting to no more than an "arbitrary preadjustment of the measure of damages," will not, though the shipper assents in writing to the terms of the document, serve to exempt a negligent carrier from liability for the true value.

2. Under section 2318 of the Civil Code, a carrier failing to comply with the requirements of the next preceding section as to tracing "freight" which has been lost, damaged, or destroyed, and giving information with respect thereto, becomes liable for the negligence of a connecting carrier.

3. Where both the parties to a case move for a new trial, the granting of either motion leaves the case pending in the lower court ; and while it so remains, a judgment overruling the other motion can not be lawfully brought to the Supreme Court for review.

Argued April 9, — Decided May 22, 1901.

Action for damages. Before Judge Reagan. Pike superior court. September 22, 28, 1900.

*R. L. Berner,* for plaintiff in error.    *W. W. Lambdin,* contra.

LUMPKIN, P. J.    This action was founded on the provisions of the Civil Code, §§ 2317, 2318, which were codified from the act of October 16, 1891, commonly called the "tracing act." See Acts of 1890 – 91, vol. 1, p. 156. In their petition the plaintiffs alleged facts bringing the case within the sections cited. The "freight" involved was a car-load of grapes, consigned to Omaha, Neb., which the plaintiffs delivered to the defendant at Barnesville, in this State. The bill of lading embraced a special contract, was signed by the plaintiffs and an agent of the defendant, and contained a stipulation that the company was to carry the grapes to the destination indicated, "if on its road, or to deliver to another carrier on the route to said destination, subject in either instance to the conditions below, which are agreed to in consideration of the rate named." Among the "conditions below" was one that the "several lines [over which the grapes were to be transported] will not be held liable for injury to, or decay of, fruit, vegetables, or melons, or any

perishable freight, caused [in divers specified ways], unless such decay or injury shall be the direct result of the carrier's negligence; and the shipper, owner, and consignee hereby assume the burden of proving such negligence." The last stipulation in the bill of lading was as follows: "In consideration of the reduced rates specified above, it is mutually agreed that the value of fruit shipments under this bill of lading shall be taken at not exceeding $500.00 per car-load; vegetable shipments, $200.00 per car-load; melon shipments, $85.00 per car-load; and the carrier shall in no event be liable for any greater sum in case of total loss or destruction; and in case of partial loss or destruction, or destruction of a quantity less than car-load, the liability shall be proportionate." The evidence introduced at the trial showed that the grapes were in good condition when delivered to the defendant; that they were not damaged on its line, but that, because of the negligence of some one or more of the other connecting carriers, they reached their destination in such a damaged condition that no more than $265.45 could be realized from a sale of them; and that if they had arrived at Omaha undamaged, they might have brought as much as $700.00. The court, holding that under the stipulation last quoted from the bill of lading the maximum value of the grapes could in no event be placed at a sum exceeding $500.00, directed a verdict for the plaintiffs for $234.55, the difference between $500.00 and $265.45, the amount for which the grapes were sold. The plaintiffs made a motion for a new trial, the main and controlling ground of which was predicated upon alleged error in holding that under the facts appearing the defendant should not be held liable for the difference between $700.00, the highest proved value of the grapes, and the $265.45 which they brought. The defendant also moved for a new trial on various grounds. For a reason which will hereinafter appear, their contents need not be set forth. The court granted the plaintiff's motion, and overruled that of the defendant. It sued out two bills of exceptions. In one, which for convenience we will designate as the "first," it alleged error in granting the plaintiffs' motion. In the other, which for a like reason we will call the "second," complaint was made of the court's refusal to sustain the defendant's motion. We will dispose of these bills of exceptions in the order indicated, and will accordingly first take up and deal with the decisive question which the defendant's

exception to the granting of the plaintiffs' motion presents, and apply the ruling which we make thereon to the case in hand.    The second bill of exceptions will then be in order for consideration.

1. There is in this country great contrariety of judicial opinion with respect to whether or not a common carrier can by special contract lawfully limit the amount of its liability for loss or damage which may be occasioned by its own negligence.    In *Railroad Co.* v. *Keener,* 93 *Ga.* 808, this court held that where "the contract of shipment was not one limiting value by express agreement, but one in which there was no attempt to estimate value," the carrier would not be exempt from the liability imposed by law for loss occasioned by its own negligence.    It is not necessary to repeat here the reasoning of our present Chief Justice, who delivered the opinion in that case and therein cited several authorities supporting the conclusion announced ; but, in view of the importance of the question, it may not be amiss to embrace the present opportunity of showing the extent to which those authorities go in sustaining the correctness of that conclusion.    We also cite infra one very strong case from 31 Minn., not referred to in the opinion just mentioned,. and indicate where numerous others on the same line and contra may be found.    After stating that the courts have differed widely in their views upon this question, Mr. Hutchinson says that "the majority of the authorities in the United States hold that it is contrary to public policy to permit the carrier to stipulate for exemption from the effects of the negligence of himself or his servants. In some of the States, on the other hand, express contracts to that effect are upheld."    The author then proceeds as follows :  " So, in reference to this particular question, it is held by the majority of the courts that a contract limiting the liability of the carrier to a certain sum in case of loss,— that is, contracts designed to secure a partial exemption from liability,— while valid and conclusive where the loss is caused by something other than the carrier's neglect, can not be allowed to operate where the loss was occasioned by the negligence of himself or his servants, but that in such a case the owner may recover the full value of the goods.    To be distinguished from these cases, however,— though the distinction is not always observed,— are those cases, obviously different, in which,. for the purpose of determining the shipper's liability for freight and the carrier's responsibility for damages, the value of the property

is agreed upon.. When such is the case, the Supreme Court of the United States and many of the State courts hold, to use the language of Mr. Justice Blatchford, 'that where a contract of the kind, signed by the shipper, is fairly made, agreeing on the value of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuation.' That this class of cases stands upon different ground from those attempting to secure a partial liability will be evident upon consideration, and several of the decisions upon the latter class have expressly stated that the rule would be otherwise in a case of this nature. But the rule must undoubtedly be confined to those cases only which properly fall within it, which are those in which, as the basis of the carrier's charges and responsibility, the value, being called in question, has been so represented by the shipper or so agreed upon between him and the carrier as to estop the shipper from afterwards alleging that it was more. The rule can not, therefore, apply to cases where the estimate of value is inserted in the bill of lading without his knowledge or consent, or by covert means, or to those in which the contract for exemption is not clear and express, as it is well settled that they will be construed most strongly against the carrier." Hutchinson on Carriers (2d ed.), § 250. We make these extended extracts because they express with great force and clearness exactly what we wish to say.

In C. & N. W. Railway Co. *v.* Chapman, 133 Ill. 96, s. c. 23 Am. St. Rep. 587, a case in which there was an express contract, it was held that : " A common carrier can not arbitrarily fix the value of the goods delivered to him for transportation, and thereby limit his liability in case of loss." It was also in that case laid down that "if a value be fixed by the carrier, and the contract of shipment is based thereon, the amount thus fixed will ordinarily determine the liability of the carrier." An examination of the opinion of Chief Justice Shope will show that the idea intended to be conveyed by the words last quoted was that there must be an actual and bona fide agreement as to value between the shipper and the carrier, and

that a mere general limitation as to value expressed in a bill of lading will not serve to exempt a negligent carrier from liability for the true value. In the notes appearing at the end of the main case in the volume last cited are references to a large number of cases on both sides of the question. Under the heading, "Tendency of recent decisions to modify rule" (p. 596), will be found several citations of cases supporting the view we are undertaking to sustain. In Moulton *v.* St. Paul Ry. Co., 31 Minn. 85, s. c. 47 Am. Rep. 781, Dickinson, J., said: "The same reasons which forbid that a common carrier should, even by express contract, be absolved from liability for his own negligence stand also in the way of any arbitrary preadjustment of the measure of damages, where the carrier is partially relieved from such liability. It would indeed be absurd to say that the requirement of the law as to such responsibility of the carrier is absolute, and can not be laid aside even by the agreement of the parties, but that one half or three fourths of this burden which the law compels the carrier to bear may be laid aside, by means of a contract limiting the recovery of damages to one half or one fourth of the known value of the property. This would be mere evasion, which would not be tolerated." Even in Alair *v.* N. P. R. Co., 53 Minn. 160, s. c. 39 Am. St. Rep. 558, which was ruled in favor of the company, the doctrine was distinctly announced that there must be an actual contract specifying that the value of the property shipped does not exceed a sum named, and that it must be "fairly and honestly made as a basis of the carrier's charges and responsibility." In his strong and well-written opinion, Mitchell, J., remarked that cases in which "the stipulation was purely and solely one arbitrarily limiting the amount of recovery, without regard to the value of the property, as in Moulton *v.* St. P. Ry. Co.," were not pertinent upon the question whether or not a carrier could enforce a real contract of the nature above indicated; and he added that in the Moulton case the Supreme Court of Minnesota "recognized the right of the parties to agree upon the value of the property or to fairly liquidate the damages in case of loss." The words just quoted furnish the key to the whole problem; that is, the parties may actually agree on the value of the particular consignment, and thus fairly liquidate in advance anticipated damages. But this is a very different thing from a loose and general limitation as to amount, appearing in a bill of lading, which manifestly could not

have been and was not intended to have reference to the identical goods which the carrier thereby contracted to transport.

Take our present case. The property delivered to the defendant company, as described in the bill of lading, was: "1 car grapes — 2,000 baskets." The paragraph of the document relied on as embracing an agreement as to value merely stipulated in the most general and comprehensive terms that "the value of fruit shipments under this bill of lading shall be taken at not exceeding $500.00 per car-load; vegetable shipments, $200.00 per car-load; melon shipments, $85.00 per car-load." Could any fair and reasonable mind, ever reach the conclusion that there was between the plaintiffs and the defendant any agreement at all respecting the value of this particular car-load of grapes, or that there was even a remote intention to make such an agreement? The bill of lading was evidently printed and prepared for use in any shipment of fruit, vegetables, or melons, and its manifest purpose was to limit liability and not to fix or agree upon values. It limited the value of all "fruit" shipments, whether consisting of grapes, peaches, apples, pears, or other fruits, or of portions of some or all of them. It declared that the value of a car-load of any kind or kinds of fruit should be "taken at not exceeding $500.00"— not that the value of the plaintiffs' carload of grapes should be fixed at $500.00 or any other specified sum. Surely, further comment as to the nature and purpose of this bill of lading would be superfluous. We find in some of the cases holding that the value was in fact definitely agreed upon (notably that of Hart v. Railroad Co., 112 U. S. 331, in which Mr. Justice Blatchford delivered the opinion quoted from by Mr. Hutchinson, as appears above) that the figures in the bills of lading expressing values had evidently been printed before their actual use, and were not inserted at the time of issuing such bills to shippers. In the case just mentioned, the bill of lading stipulated "that the carrier assumes a liability on the stock to the extent of the following agreed valuation: If horses or mules, not exceeding two hundred dollars each. If cattle or cows, not exceeding seventy-five dollars each," etc., etc. With the utmost respect to the memory of the eminent Justice, this does not, in view of the printed words "if" and "two hundred," to our minds much resemble a fixed and definite agreement as to the value of the identical horses shipped by Hart; but much stress was laid on the words "agreed valuation," and the con-

tract certainly related to horses only. At any rate, the case was decided on the theory that the bill of lading did embrace such an agreement; and assuming this to be so, we have no complaint to make of the principle laid down, for our own ruling is in strict accord therewith.

2. Under section 2318 of the Civil Code, if the carrier receiving the application provided for by the preceding section fails to trace the freight and give the required information, it becomes "liable for the value of the freight lost, damaged, or destroyed, in the same manner and to the same extent as if said loss, damage, or destruction occurred on its line." The damage which the plaintiffs sustained was due to the negligence of one or more of the defendant's connecting carriers. The law, under the facts of this case, imputes this negligence to the defendant, and makes the same, in effect, its negligence. It has been clearly shown that a carrier can not stipulate for exemption from the consequences of such negligence. It can hardly be said that the defendant company attempted to protect either itself or any other carrier from injury or damage caused by negligence. As will have been seen, the stipulation in the bill of lading which related to this matter really contemplated that liability might arise from negligence, and merely provided that it should not be presumed, but must be affirmatively proved. See, in this connection, *Railway Co.* v. *Sloat*, 93 *Ga.* 803, 807. The defendant was, therefore, under the statute, liable for some amount. It did not, as we have endeavored to show, limit its liability by a bona fide agreement as to valuation. A jury could, under the evidence, have placed the value of the grapes at $700.00, in which event the verdict would have been for $434.55. The court, under an erroneous view of the law, limited the plaintiffs' recovery to $234.55. The verdict directed was certainly not demanded, and the court properly corrected its own error by granting a new trial.

3. The second bill of exceptions was prematurely sued out, and the writ of error issued thereon must accordingly be dismissed. At the time it was certified, the case was pending in the court below, for a new trial had been granted and the case stood upon the docket for another hearing. It was, in *Duke* v. *Story*, 113 *Ga.* 112, upon the authority of previous cases, held that so long as a motion for a new trial in a case was undisposed of, the case itself was pending in

the lower court. Certainly, then, a case is pending when a motion for a new trial therein has not only been made, but granted.　　:

*Judgment in first case affirmed ; in second case, writ of error dismissed. All the Justices concurring, except Simmons, C. J., who was disqualified.*