GEORGIA SOUTHERN & FLORIDA RAILWAY COMPANY
*v.* JOHNSON, KING & COMPANY.

1. Since in this State public policy prevents a carrier from contracting against the results of his own negligence, the contract to ship goods "released" must be construed to mean that he is only relieved from losses occasioned without his negligence.
2. Where goods are shipped "released" the burden is upon the carrier to show that the loss was within the exemption and not occasioned by his negligence. Civil Code, § 2265.
3. Where there is a suit for a conversion, the wrong-doer can not take advantage of an agreed valuation of the property in order to lessen the amount of his liability.
4. Where the carrier arbitrarily fixes the value of a particular consignment, or where by the terms of the printed bill of lading there is an arbitrary fixing of value, before the goods are inspected, and without regard to their real worth, the same will be treated as a mere attempt in advance to limit liability and not a bona fide attempt to value the property shipped.
5. But where by the act of the parties there is a bona fide valuation, or where the contents of packages are unknown to the carrier, and the valuation is placed thereon by the shipper, who thereby gets a lower rate of freight, and the goods are lost or damaged, the shipper is estopped from recovering beyond the valuation thus fixed by him.

Argued October 21,—Decided November 11, 1904.

Action for damages. Before Judge Felton. Bibb superior court. April 21, 1904.

This case was tried on an agreed statement of facts, from which it appeared that the plaintiffs in the court below filled out duplicate shipping tickets, signed the same, and sent them with shipments of candy to the company's depot. The contents of the packages were unknown to the carrier, except as indicated by the tickets. One of the duplicate receipts signed by the plaintiffs was retained by the company, and the other, signed by its agent, was returned to the plaintiffs. The boxes contained candy, which, under the classification of freights in effect at the time, could be shipped either as first or fourth class, confectioneries, namely candy, bonbons, and confectionery not otherwise specified, being shipped as first class at a high rate. Such shipments "with value limited to six cents per pound, and so expressed in the bill of lading," are shipped as fourth class and at a considerably lower rate. On the shipping tickets prepared by the plaintiffs in the present case, and others used by the company, there was printed "candy released six cts. per pound valuation ; entire shipment released," this stipulation being for the purpose of securing the rate of freight applicable to fourth-class shipments under the Southern classification. It was agreed that some of the goods had been damaged and others lost. The company conceded its liability on the basis of six cents per pound, and tendered the amount thus calculated to the plaintiffs, who declined to receive the same, insisting that they were entitled to the real value. The judge so found, and the carrier excepted.

*John I. Hall, R. C. Jordan,* and *G. S. Jones,* for plaintiff in error. *Lane & Park,* contra.

LAMAR, J. The word "released," as used in contracts of shipment, has from usage acquired a well-defined meaning, though as yet it does not seem to have been judicially construed. No doubt the effect given the term will vary in the different courts, according as the law of the State permits or prohibits contracts against the results of negligence. In this State, where public policy forbids such limitation, the word must be held to mean only that the shipper agrees to relieve from all liability as against which the law allows the carrier to exempt itself by contract. See *Cooper* v. *Raleigh & Gaston R. Co.,* 110 *Ga.* 662 ; Hutchinson on Carriers, § 250. But even in such cases the presumption

is against the carrier, and the burden is upon it to establish that the loss was within the exception, and not occasioned by its own negligence. Civil Code, § 2265. Here there was no explanation of the circumstances attending the loss, and, admitting its liability, the carrier tendered to the plaintiffs the value of the goods as named in the shipping receipt. This was declined, and the suit was continued for the purpose of recovering the real value of the articles shipped.

In an action of trover or damages for conversion the tort-feasor could not take advantage of his own wrong, nor lessen the measure of his liability, by invoking an agreed valuation which the plaintiff may have made for the purpose of reducing the freight rate or securing like collateral advantage. *Sav., F. & W. Ry. Co.* v. *Sloat,* 93 *Ga.* 803. And where there is only a pretended valuation, the same is true; as, for example, where clothes were valued by the hundred pounds. It would have been equally arbitrary, but with more appearance of reason, to value them by the yard. But in either case it was a mere attempt to prearrange the amount of damages, in case of loss. *Ga. R. Co.* v. *Keener,* 93 *Ga.* 808. So, limitations in the printed bill of lading, stating that the company will not be responsible for loss of particular classes of goods beyond a specified amount. Such figures are named without inspection, before the goods are offered, and independently of the real worth of the property. In most of the forms there is not even a pretense of valuation, but an express stipulation that the goods shall be taken as worth *not more* than a given sum, or that the company will not be liable *beyond a given amount.* Such stipulations are mere prearrangements as to the amount of damage, and will not be enforced so as to exempt a negligent carrier from liability for the true value. *Wood* v. *So. Ex. Co.,* 95 *Ga.* 452. And this is so whether the shipper merely accepts a bill of lading containing such stipulation, or assents thereto in writing. *Central of Ga. Ry. Co.* v. *Murphey,* 113 *Ga.* 514. Candies do in fact vary in quality and value, from the cheapest stick candy to expensive French candies. A classification, therefore, according to value is not arbitrary. Neither is it unreasonable or unlawful for the rate to be proportioned with reference to the value and to the amount for which the carrier should be held responsible in the event of loss. Freight

rates are not based solely upon the weight of goods and the space they will occupy in the cars. Nor does diligence require that all goods shall receive the same care. Some may be properly loaded on open cars. Others may be forwarded by regular freight-trains; others, on account of their perishable nature, must be sent by fast freight; others, because of their great inherent value, must be shipped under special precautions to prevent loss by theft. The difference in the quality and value may create a difference in the cost of shipment. The carrier is entitled to some compensation on the basis of the difference in care and expense attending the shipment, and also for the greater or less liability in case of loss or damage. He is primarily an insurer, and as much entitled to a premium as an insurance company. If the latter may charge more for insuring goods worth $5,000 than for those worth $1,000, so may the carrier, for the risk incident to handling candy worth $1 per pound, charge more than when he hauls that worth only six cents a pound.

Here the shippers had an option. They could have forwarded the goods without any statement as to their classification or valuation, and in case of loss would have been entitled to stand upon their common-law right; instead of which they classified and valued. The contents of the boxes were unknown to the company. The statement on the ticket put the goods in the fourth instead of the first class as completely as if they had been called canned goods, or any other article listed in the fourth class. The carrier had the right to rely on the classification and valuation made by the owner. It fixed a rate based on such valuation. The shipper got the benefit of the rate and the carrier suffered the loss. And while there is much conflict on the subject, the previous rulings in this State recognize that the shipper is estopped by such valuation and can not recover beyond that amount where the loss was not occasioned by the carrier's conversion. *Central of Ga. Ry. Co.* v. *Murphey,* 113 *Ga.* 514; *Ga. R. Co.* v. *Keener,* 93 *Ga.* 810; *Southern Ry. Co.* v. *Horner,* 115 *Ga.* 381 (2). But it is claimed that the bills of lading prepared by the company contained a stipulation that "candy valuation six cents released" went forward as fourth class and on the lower rate, that this was an arbitrary valuation, and a mere attempt to prearrange the amount of damages in case of loss. But the sufficient answer to

this proposition is that here the contract of shipment was not evidenced by such instrument. Nor can we know from the record the other terms of such bill of lading, nor whether thereby the shipper had an option. But even in the case of bills of lading containing such stipulations, if the contents of the package and value are unknown, and the carrier relies on the valuation made by the parties, and bases its rate accordingly, the mere fact that the appropriate bill of lading has been printed in advance, and to meet the requirements of a particular class of business, and to save having to write out the proper contract, would not change the principle. It comes back always to the question as to whether there has been a bona fide valuation, or whether there is only an attempt by the company to limit liability regardless of value. *Judgment reversed. All the Justices concur.*