A. E. OSTROOT v. NORTHERN PACIFIC RAILWAY COMPANY and Another.[1]

July 22, 1910.

Nos. 16,634—(189).

**Contract limiting carrier's liability.**

A contract between a common carrier and a shipper, limiting the carrier's liability, in case of loss of the goods, to a stipulated valuation, will be upheld if it is made to appear that the contract was fairly entered into by the shipper, with full freedom of choice, and that it is also just and reasonable.

**Same — unreasonable valuation — evidence.**

In this case the subject-matter of the shipment was household goods, including a piano, and the alleged contract upon which the carrier relied fixed their value at five cents a pound. The trial court found that the contract was not fairly entered into, nor was it just or reasonable. *Held*, that the finding was sustained by the evidence.

Action in the district court for Hennepin county against Northern Pacific Railway Company and Cameron Transfer & Storage Company to recover $1,252.67, the value of certain household goods.

[1] Reported in 127 N. W. 177.

[Note]    Validity of contract limiting liability of carrier to a stipulated valuation, see note to Everett v. Norfolk & S. R. Co. (N. S.) 1 L. R. A. (N. S.) 985.

which were destroyed by fire while in possession of defendant railway company. The substance of the complaint is stated in the opinion.

In its separate answer the railway company denied having had with plaintiff any transaction of the character alleged in the complaint, but alleged that it received a shipment of goods from the Boyd Transfer & Storage Company for transportation to Spokane, and if it handled any goods of plaintiff they were included in that shipment, and as an affirmative defense set out the allegations mentioned in the first paragraph of the opinion. The separate answer of defendant storage company alleged a delivery of certain household goods to defendant for the purpose of combining the same with other lots of household goods to be placed in connection therewith in a car to form a pool car or collective car of household goods to be shipped to the Northwest Transfer & Storage Company at Spokane, there to be separated from other goods and transported to plaintiff at Moscow, Idaho; that the goods were received in accordance with the contract, a copy of which was attached to the answer, by the terms of which defendant was not to be responsible for loss or damage in transit beyond the amount which might be collected from the railway company over whose lines goods were to be shipped, and it was agreed the goods were to be shipped "released for valuation $5 per cwt." under the form of release issued by the railroad companies receiving the same for transportation and that the goods were so shipped; and offered judgment in favor of plaintiff for the sum of $225, the value of the goods at the valuation specified. The reply to this answer denied the making of any contract other than that stated in the complaint and alleged that plaintiff never authorized any contract limiting the valuation of the goods or releasing the same to any valuation.

The case was tried before Holt, J., who made the findings of fact set out in the opinion and as conclusions of law found that the valuation placed upon plaintiff's goods by defendant railway company was not fairly entered into, nor was it just and reasonable; that plaintiff was entitled to recover of defendant railway company the sum of $750 and that as to defendant storage company plaintiff

have judgment, if desired, for the amount tendered and no more. From the judgment entered pursuant to the findings, defendant railway company appealed. Affirmed.

*Charles W. Bunn* and *Charles A. Hart,* for appellant.

*Thomas Kneeland,* for respondent.

START, C. J.

This action was brought in the district court of the county of Hennepin to recover the value of certain household goods and other chattels, including a piano, which were destroyed by fire while in the possession of the Northern Pacific Railway Company, hereafter referred to as the defendant. The complaint alleged that the plaintiff was the owner of the goods, which were of the aggregate value of $1,262.50, and that they were delivered to the defendant at Minneapolis, to be transported by it to Moscow, Idaho, and that by its negligence they were destroyed by fire while they were in its possession. The answer of the defendant put in issue the allegations of the complaint as to plaintiff's ownership of the goods and their value, and as an affirmative defense alleged that by the contract of shipment it was agreed that the value of the goods was five dollars per hundred pounds, and no more; that the defendant had no knowledge that they were of any greater value, and accepted and carried them for a charge based upon such agreed valuation; and that, if it had known that they were of greater value, a correspondingly greater charge would have been made for their transportation. The reply put in issue the affirmative allegations of the answer.

The cause was tried by the court without a jury, and the facts found, so far as here material, are to the effect following: On April 4, 1908, the plaintiff was the owner of the goods, including the piano, which were of the aggregate value of $750 and weighed 5,150 pounds. Prior to the date named the plaintiff delivered the goods to the Cameron Transfer & Storage Company at Minneapolis, and directed it to keep them in storage and to ship them for him to Moscow, Idaho. The storage company, through its agent, the Boyd Transfer & Storage Company, delivered them in a loaded car to the defendant, at Minneapolis, which car, so loaded, was received by the defendant

for transportation to Spokane, there to be delivered to the Northwest Transportation & Storage Company for transportation to its destination at Moscow, Idaho. Prior to April 4, 1908, there was an oral understanding between plaintiff and the Cameron Company that the goods should be transferred from Minneapolis to Spokane in a collective or pool car of household goods in care of the Northwestern Company at Spokane, where such carload was to be distributed, and the goods of plaintiff were to be thereafter shipped and delivered to him at Moscow. The same were to be shipped by the Cameron Company with the express understanding as a part of the collective car of household goods, and that plaintiff's goods, with all of the other goods in the car, were to be released at a valuation of five dollars per hundredweight. The goods were received by the Cameron Company for shipment with the oral understanding, had between plaintiff and it, that they were all secondhand household goods or emigrant movables, and might be so classified. The receipt for the goods was delivered by the Cameron Company to the plaintiff on April 4, 1908, after his goods had left the actual possession of the Cameron Company and were in the possession of the Boyd Company to be placed in the car for actual transportation on the railroad of the defendant. The valuation of five dollars per hundredweight is the valuation expressed in the railway company's tariffs applicable to shipments made under the so-called released rate, and not the result of any actual estimation, computation, or consideration of actual value of the goods by any of the parties to this action before the time of the shipment of the goods of plaintiff. He had no knowledge of nor anything to do with the Boyd Company or its transactions with the defendant in relation to his goods or their shipment. The freight charges paid by plaintiff to the Cameron Company from Minneapolis to Moscow were on the household goods $95.28, and an additional five dollars on the piano, and for packing and carting the same $19.15, making a total of $119.43. The plaintiff did not sign any receipt, bill of lading, or other contract with respect to shipment or transportation of his goods, nor was any bill of lading delivered to him personally by the defendant railway company. The rate of the defendant for shipment upon carload lots of household goods

from Minneapolis to Spokane, where no limitation of liability was fixed was $1.45 per hundredweight; and where a limitation of liability was fixed and agreed upon at five dollars the rate was $1.25 per hundredweight, and upon emigrant movables seventy-five cents. Such rates had been duly posted and were in force at the time of the shipment herein. While the goods were being transported by the defendant and were in its possession, they were lost by fire, as stated in the complaint, through the negligence of the defendant. After the Boyd Company had loaded plaintiff's goods in the railway car with other goods, it sealed the car and billed the same under the tariff of emigrant movables, and received from the defendant a bill of lading upon the face of which it was stated: "O. R. release $5. per cwt."

The trial court found as a conclusion of fact and law that the valuation placed upon the plaintiff's goods by the defendant was not fairly entered into, nor was it just and reasonable, and that plaintiff have judgment for $750. Judgment was so entered, from which the defendant appealed.

The pivotal question raised by defendant's assignments is the validity of the alleged contract as to the value of plaintiff's goods, so as to limit the amount of his recovery to such valuation.

The alleged contract is an attempt by a common carrier to limit its common-law liability for the loss of the goods. Such contracts are exceptions to the common-law rule of liability, and they should be carefully scrutinized by the courts, and only enforced when it is made to appear that they are just and reasonable and were fairly entered into by the shipper, with full freedom of choice. It is the settled doctrine of this court that contracts so made, if fair, just, and reasonable, will be upheld as a proper mode of securing a due proportion between the amount for which the carrier may be responsible and the freight charges he receives, and of protecting himself from extravagant valuation in case of loss; but a mere arbitrary valuation, simply for the purpose of limiting the carrier's liability, will not be sustained as just and reasonable within the rule. Alair v. Northern Pacific Ry. Co., 53 Minn. 160, 54 N. W. 1072, 19 L. R. A. 764, 39 Am. St. 588; J. J. Douglas Co. v. Minnesota Transfer Ry. Co., 62 Minn. 288, 64 N. W. 899, 30 L. R. A. 860; O'Malley v. Great

Northern Ry. Co., 86 Minn. 380, 90 N. W. 974; Murphy v. Wells-Fargo & Co. Express, 99 Minn. 230, 108 N. W. 1070; Hanson v. Great Northern (N. D.) 121 N. W. 78.

The question whether such a contract was fairly entered into and is just and reasonable is ordinarily one of fact, and the controlling question in this case is whether the finding of the trial court of the ultimate fact, that the contract relied upon by the defendant was not fairly entered into by the plaintiff and was not just and reasonable, is supported by the evidence. The finding, although expressed in the conclusions of law, is one of fact, and must be so treated. Dunnell, Pr. § 511.

The trial court found the evidentiary facts to be substantially as we have stated them, and the evidence is ample to sustain such findings. The refusal of the trial court to find certain other evidentiary facts as requested by the defendant was not error, for some of them were immaterial, and the evidence as to the others was not such as to require the court so to find as a matter of law. Upon a consideration of the evidence and the evidentiary facts found by the court, we cannot say, as a matter of law, that the contract was fairly entered into and is just and reasonable. On the contrary, we are of the opinion that the finding of the court that the contract was not fairly entered into and was not just and reasonable is supported by the evidence.

Judgment affirmed.