# GERTRUDE O'CONNOR v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 14, 1912.

Nos. 17,624—(142).

**Contract with carrier — limitation of common-law liability — question of fact.**

In this case involving an attempt to limit, by contract, the common-law liability of a common carrier for the negligent loss of goods shipped, it is *held* that the evidence received made it a question of fact whether the contract was fairly made and was just and reasonable.

**Assignments of error.**

The assignments of error do not challenge any ruling on the admission or exclusion of evidence.

**Emigrant movables — designation not a misrepresentation.**

The shipment was billed by plaintiff's agent as emigrant movables. *Held,* that the designation covered plaintiff's goods, consisting of typewriter, dictionary, wearing apparel, trunk, and personal effects, and was not a falsification or misrepresentation which estops plaintiff from claiming the actual value of those goods; nor was such designation of the goods a violation of the interstate commerce act; nor does that act, under the evidence in this case, require the court to instruct the jury that the limitation of liability in the bill of lading was valid.

Action in the district court for Ramsey county to recover $598.65 damages for loss of certain personal property received by defendant for shipment. The answer admitted the destruction of certain goods received from the Boyd Storage & Transfer Company; that in consideration of a lower rate of freight the consignor declared the value

[1] Reported in 136 N. W. 743.

[Note] Power of carrier to limit amount of liability for loss in cases of negligence, see note in 14 L.R.A. 433 and note in 1 L.R.A.(N.S.) 985.

Effect on misrepresentation as to character, quantity, or value of goods by shipper on his right to recover for loss, see note in 23 L.R.A.(N.S.) 745.

of the goods to be not in excess of $10 per hundred pounds, and by instrument in writing released defendant and its connecting carriers from liability arising from loss of goods in excess of $10 per hundred pounds; that the schedule of rates for the interstate transportation of household goods and emigrant movables was duly filed with the Interstate Commerce Commission, and published and posted as required by law; that the goods of plaintiff did not weigh more than five hundred forty-five pounds; that certain of the goods enumerated in the complaint were not entitled to be transported under the classification of emigrant movables, and denied liability for the loss of the goods but offered to allow plaintiff to take judgment for $54.50. The reply was a general denial.

The case was tried before Olin B. Lewis, J., and a jury which returned a verdict in favor of plaintiff for $560. From an order denying defendant's motion for judgment in favor of plaintiff for $54.50, notwithstanding the verdict for $560, and granting defendant's motion for a new trial, unless plaintiff would consent to a reduction of the verdict to $533.40, defendant appealed. Affirmed.

*W. L. Clift,* for appellant.

*James Matlimore* and *T. P. McNamara,* for respondent.

HOLT, J.

Plaintiff sued the defendant, a common carrier, for the value of goods intrusted to the carrier for shipment and lost or destroyed in transit through negligence. She recovered a verdict for the full value. The defendant moved that judgment be entered for plaintiff for $54.50 notwithstanding the verdict of $560, and in case of a denial thereof that a new trial be had. The court denied the motion for judgment, and also the one for a new trial on condition that plaintiff release all of the verdict in excess of $533.40. Plaintiff released, and defendant appeals.

The Boyd Transfer Company is a corporation engaged in the business implied by the name, in Minneapolis, Minnesota. It packs, loads, and ships goods in carload lots to the West and to the East. By collecting small lots of goods from different shippers sufficient to fill a car, car lot rates are obtained, thereby reducing the freight

rate somewhat to such shippers. Prior to October 24, 1910, plaintiff engaged the Boyd Transfer Company to call at her apartments in Minneapolis for her goods, to pack and box such as were not already prepared for shipment, and to load them with those of other shippers on a railway car for transportation to Portland, Oregon. The Boyd Company called for the goods, which consisted of a typewriter, already boxed, wearing apparel, some jewelry and toilet articles, a set of the Century Dictionary, some stationery, bed and table linen, some books, an "exerciser," electric lamp, curtains, and small personal belongings of a lady, which were all contained in the trunk packed by plaintiff, except the dictionary, books, and stationery, which were boxed by the Boyd Company.

Plaintiff testified that she informed the Boyd Company that the goods she had were new, and described the property to them, that she was willing to pay the regular rate for transportation, that the company said they had a through car and said nothing about shipping household goods therein, and she understood that her goods were shipped as freight is regularly shipped, as a separate consignment, and that the Boyd Company would ship the way they did all their goods. The company filled a car with about twenty-two thousand pounds of goods from different owners. Among these were plaintiff's which weighed five hundred forty-five pounds. The shipping clerk of the Boyd Company made out a shipping bill or bill of lading, wherein the goods were designated as emigrant movables, and he also wrote below, "Released to $10.00 per cwt." The shipping clerk of the defendant accepted and signed the bill of lading so made out, neither one of these clerks having a word of conversation about the goods, nor having any personal knowledge of their character or value. Whether this bill of lading was made out after or before the car was delivered to the defendant does not appear.

The defendant by its duly promulgated tariff has a rate of one dollar per hundredweight from Minneapolis to Portland on emigrant movables or household goods, personal effects, and specified kinds of property of no greater value than $10 per hundredweight, and a rate of $1.60 where the value exceeds that amount. The verdict was $560, but on the motion for a new trial the court concluded that there could

be no recovery for the jewelry in the shipment, because such articles are not accepted for shipment by defendant, and the designation of such articles as emigrant movables was a fraud on the carrier, and therefore granted a new trial unless the value of these included in the verdict was deducted therefrom. Plaintiff consented to a reduction of the recovery to $533.40.

The trial court ruled that the Boyd Company was the agent of the plaintiff in making the shipment, and its acts bound her. That being the case, the defendant contends that it conclusively appears that the Boyd Company knew the different rates, and, with full knowledge and opportunity to elect, chose the lower rate with the limited liability. Therefore the contract was fairly entered into. It also claims that the limitation was just and reasonable, because there was ample evidence to show that $10 a hundredweight is a fair value on emigrant movables, and the plaintiff, by her authorized agent, having marked the goods "emigrant movables" and thereby secured a lower rate, is now estopped from claiming them to be of different character. The defendant also urges that under the interstate commerce act, plaintiff, by agreeing to a limited liability, secured a low rate, and it is now unlawful discrimination and a violation of that act for defendant to pay more than the stipulated value for the loss, nor will the law compel such payment. Under objection plaintiff was permitted to testify that she never knew of or consented to a release of value on her goods, never saw the bill of lading or shipping bill, and understood that her goods would be shipped in the car of the Boyd Company's procuring as a separate freight shipment. She further testified, and there is nothing to the contrary, that she informed the Boyd Company of the kind and character of her goods. The defendant also proved that the Boyd Company was engaged in the forwarding, warehouse, and transfer business, shipping extensively East and West in carload lots.

The assignments of error do not present for review any ruling on the admission of the evidence. If, therefore, the evidence received tends to support the finding of the jury that the contract limiting the liability of defendant in case of loss to $10 per hundredweight was not fairly made, and was not just or reasonable, the case is governed

by the decision in Ostroot v. Northern Pacific Ry. Co. 111 Minn. 504, 127 N. W. 177, and there must be an affirmance, unless the court erred in giving or refusing to give instructions to the jury.

In passing on the question, the jury, on the evidence received, had a right to take plaintiff's situation and her relation to the Boyd Company and its business and relation to defendant into consideration. The Boyd Company does business in the nature of a common carrier. The defendant undoubtedly knew the business of this extensive shipper, knew that the carload lots shipped by the Boyd Company in its name and the freight thereon paid by it were the property of different owners, and that without doubt a considerable portion of the amount saved by shipping at reduced rates goes to the Boyd Company, and not to the owners of the goods shipped.

The business between defendant and the Boyd Company seems to have been so well established that it had resolved itself into a regular routine, where no word need be spoken or negotiation had. The bill of lading, which is generally made out for ordinary small shippers by the carrier, was made out by the Boyd Company to be signed merely by the defendant. No attempt was made by the clerk who acted for the Boyd Company, nor by the clerk who acted for defendant in the shipping transaction, to ascertain what the goods were or their value, nor did either of them know. Under this situation a release of nine-tenths of the value of the goods appears neither a contract fairly entered upon nor one that is just or reasonable. Strictly speaking, there was no attempt at an agreed valuation, or any valuation, by plaintiff of the goods. The very fact that the bill of lading states "Released to $10.00 per cwt." recognizes that the value was greater. How much was released is not disclosed. Moreover, it has been held that a party engaged in the business of the Boyd Company, itself in a certain sense a common carrier and circumstanced to plaintiff as it was, has no authority to limit the liability of the carrier in a shipping contract. Benson v. Oregon, 35 Utah, 241, 99 Pac. 1072, 136 Am. St. 1052, 19 An. Cas. 803.

In the Ostroot case, supra, the Chief Justice has well stated that contracts limiting the common-law liability of common carriers "are exceptions to the common-law rule of liability, and they should be

carefully scrutinized by the courts, and only enforced when it is made to appear that they are just and reasonable and were fairly entered into by the shipper with full freedom of choice." And since this business of these transfer companies has assumed such proportions as it has in recent years of soliciting and collecting from different persons small shipments, to be put together in carload lots and shipped in the name and on account of the transfer company, significant force is given to the warning sounded by Mr. Justice Canty in the concurring statement in Douglas v. Minnesota Transfer Ry. Co. 62 Minn. 288, 64 N. W. 899, 30 L.R.A. 860, viz: "I concur in the foregoing opinion, but am of the opinion that the rule of law laid down in this and the Alair case [1] should be watched closely, as in practice it is liable to lead to evasion and abuse on the part of the common carrier." The ostensible shipper, such as the Boyd Company, does not represent the interest of the owner of the property and actual shipper, but stands on a different footing to the carrier than does the latter.

Was there error in refusing to instruct the jury that plaintiff was estopped from claiming a higher value than $54.50 because her agent billed the goods as emigrant movables, and also was there a violation of the interstate commerce act in that by a false billing a cheaper rate was obtained than the goods, properly billed, could have been shipped for so that plaintiff was guilty of a crime? The evidence does not disclose the character of the goods in the car outside of plaintiff's. Assuming that plaintiff is bound by the designation of the goods as emigrant movables made in the bill of lading, the case is not thereby brought within the rule announced in Harrington v. Wabash R. Co. 108 Minn. 257, 122 N. W. 14, 23 L.R.A.(N.S.) 745, wherein it was held that a false marking of boxed goods by a shipper's agent whereby a lower rate was obtained is a fraud on the carrier which precludes a recovery of the true value of the goods shipped. As far as we discover from the record, emigrant movables include wearing apparel and the ordinary personal effects of intending settlers, also tools and implements of calling. Thus the dictionary and typewriter of plaintiff, who was apparently a stenographer, come in under the designation in the bill of lading, and it covers

[1][53 Minn. 160, 54 N. W. 1072, 19 L.R.A. 764.]

the goods in question, except the jewelry, eliminated from the verdict as it now stands. Therefore there was no fraud in designating or billing the goods which will estop plaintiff from asserting their actual value. Nor for the same reason has there been any violation of the provision of section 10 of the interstate commerce act,[1] as amended June 18, 1910 [2] which makes it a criminal offense to obtain from a common carrier a lower rate than the established tariff by the false billing or false representation of the goods in the packages shipped.

Defendant also contends that the freight rate of one dollar per hundredweight was given on the agreement that the defendant's liability was limited to $10 per hundredweight, and the effect of permitting a recovery for more now would amount to a discrimination in favor of plaintiff, prohibited by the interstate commerce act. There is nothing in the act directly regulating shipping contracts with reference to the limitation of the carrier's liability; and courts have held that the act does not interfere with the power of the states to determine the validity of contracts limiting the common-law liability of common carriers.

In the well-considered case of Hooker v. Boston, 209 Mass. 598, 604, 95 N. E. 945, it is stated: "Limitation of liability by contract in case of loss has not been abolished by the interstate commerce act. Reasonable agreements in this regard are upheld. This is a subject about which the policy established in the several states prevails, since as well as before the enactment of the Federal statutes. Hence an agreement inserted in a bill of lading limiting liability in case of loss has been held invalid, if contrary to the law of the state, even though made the basis of a contract of interstate carriage."

Of course, as to the tariff rates, the published tariffs control, and it it not an open question whether these rates are just or reasonable; but we fail to see such a connection between these rates and the attempted limitation of the carrier's liability that the courts may not ascertain and determine the validity of the latter. Mr. Justice Day, in the case of Pennsylvania R. Co. v. Hughes, 191 U. S. 477, 24 Sup. Ct. 132, 48 L. ed. 268, involving the application of the interstate commerce act to an attempted limitation of a common car-

[1][24 St. 382, c. 104.]   [2][36 St. 547, c. 309.]

rier, after summarizing the provisions of the act as then existing, says:

"We look in vain for any regulation of the matter here in controversy. There is no sanction of agreements of this character limiting liability to stipulated valuations, and, until Congress shall legislate upon it, is there any valid objection to the state enforcing its own regulations upon the subject, although it may to this extent indirectly affect interstate commerce contracts of carriage?" The court holds none exists.

We are of the opinion that upon the evidence in the case the trial court did not err in instructing the jury to determine the question whether or not the contract attempting to limit the defendant's common-law liability was fairly entered into and was just and reasonable, nor in refusing to give the requests of the defendant to the effect that the limitation was binding on plaintiff and that the verdict should not be more than $54.50.

The orders appealed from are affirmed.