ST. LOUIS, I. M. & S. RY. CO. v. WALLACE et al.　(No. 784.)

(Court of Civil Appeals of Texas. Amarillo. May 8, 1915. Rehearing Denied May 22, 1915.)

1. CARRIERS ☞156—CONVERSION OF FREIGHT —LIABILITY.

A carrier converting goods shipped under a contract limiting liability to a specified sum at which the goods are valued is, notwithstanding the contract, liable for the full value of the goods.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 697–719; Dec. Dig. ☞156.]

2. CARRIERS ☞156—CONVERSION OF FREIGHT —LIABILITY.

Where a carrier transported freight to a wrong place, and there sold it as unclaimed freight, it converted it and was liable for its full value, though the contract of shipment fixed a less sum as value, and though a carrier merely losing freight may rely on the limited liability.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 697–719; Dec. Dig. ☞156.]

3. CARRIERS ☞94—LOSS OF FREIGHT—EVIDENCE—ADMISSIBILITY.

In an action against a carrier for the conversion of freight, the testimony of the freight claim agent of the carrier as to his efforts in tracing the freight was admissible, and he could, when having personal knowledge of the facts, testify as to the remittance to the treasurer of

the carrier of the net proceeds of the freight sold as unclaimed freight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ☞94.]

4. TRIAL ☞85 — EVIDENCE — OBJECTIONS — SUFFICIENCY.

A general objection to testimony, a part of which is admissible, is untenable.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 222–225; Dec. Dig. ☞85.]

5. CARRIERS ☞94—LOSS OF FREIGHT—PETITION—EVIDENCE—ADMISSIBILITY.

Under a petition, in an action against a carrier for loss of freight, which described the freight as household goods of a family, evidence of the loss of wearing apparel, clothing, etc., was admissible.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ☞94.]

Appeal from Armstrong County Court; H. A. Mobley, Judge.

Action by T. J. Wallace against the St. Louis, Iron Mountain & Southern Railway Company and others. From a judgment for plaintiff against defendant named, it appeals. Affirmed.

Turner & Rollins, of Amarillo, for appellant. Moore & Moore and J. S. Stallings, all of Claude, for appellee Wallace.

HENDRICKS, J. The appellee Wallace sued the appellant, the St. Louis, Iron Mountain & Southern Railway Company, also the Texas & Pacific Railway Company and the Ft. Worth & Denver City Railway Company, for damages alleged to represent the value of a certain box of household goods, charging conversion of such box by the Iron Mountain. The trial court peremptorily instructed the jury in favor of the Texas & Pacific and the Ft. Worth & Denver City Railway Companies; and, upon issues submitted, the jury found against the Iron Mountain & Southern Railway Company in the sum of $460. The bill of lading issued for the shipment of the box of household goods was indorsed, "Rel. $10. val.," which indorsement, in connection with another stipulation, the appellant contends constitutes an agreed value, by virtue of which the appellee is bound.

A witness for the railway company testified that the above notation meant that the goods were released at a valuation of $10 per hundredweight, and also said that, on account of the release clause notation on the bill of lading, the particular box of goods took a lower freight rate than it otherwise would have taken without the same being noted upon the contract; said witness testifying to the two rates (the lower and the higher) prescribed by the Interstate Commerce Commission.

The trial court charged the jury, if the Iron Mountain & Southern Railway Company converted the goods to its own use and benefit, to find for the value of the goods as shown by the evidence. They were also instructed that, if they failed to find from a preponderance of the evidence that appellant converted the goods, they were charged that appellant merely failed to deliver the box of goods as it had contracted to do, and, in that event, to find for the plaintiff for the sum of $36.31, with interest; said amount being the result of $10 per hundredweight, with the amount of prepaid freight added. The box of household goods was delivered by appellee to appellant at Newport, Ark., to be delivered to him, as consignee, at Memphis, Tex. The box was never delivered; appellee contending that the evidence shows that it was shipped to Memphis, Tenn., a destination in an opposite direction, and was there sold as unclaimed freight.

[1] Justice Lumpkin, of the Supreme Court of Georgia, held that the delivery of goods by a railway company, at a station and to a person to whom the same were not consigned, constituted a conversion, and made the company liable for the full value of the goods. He said:

"Although it (the contract of shipment) fixes upon the goods a valuation less than their real * * * value, which stipulation the shipper agreed to in consideration of the rate of freight being reduced, there is nothing in its terms which would relieve the carrier from damages occasioned by its own negligence in making a wrong delivery." Savannah, F. & W. Ry. Co. v. Sloat et al., 93 Ga. 803, 807, 20 S. E. 219–221.

The case of Great Northern Railroad Co. v. O'Connor, 232 U. S. 508, 34 Sup. Ct. 381, 58 L. Ed. 703, decided by Justice Lamar of the Supreme Court of the United States, involved an interstate shipment of household goods, with a notation indorsed upon the bill of lading: "Released to $10 per cwt." The household goods were lost en route, and the trial court, as well as the Supreme Court of Minnesota, held that the plaintiff was entitled to recover the full value of the goods shipped. The goods were shipped upon a lower freight rate, and Justice Lamar held that the valuation named was the agreed valuation, and that the liability should go to that extent, and no further, citing the familiar cases previously decided by the Supreme Court of the United States. Neither does the opinion by Justice Lamar, nor the opinion by the Supreme Court of Minnesota (O'Connor v. Great Northern R. Co., 118 Minn. 223, 136 N. W. 743), disclose how the goods were lost, nor what became of them.

The Supreme Court of New York said, in the case of Magnin v. Dinsmore, 70 N. Y. 411, 26 Am. Rep. 608:

"The act which will deprive the carrier of the benefit of the contract for a limited liability fairly made must be an affirmative act of wrongdoing, not merely ordinary neglect in the course of the bailment. It need not necessarily be intentional wrongdoing, but the mere omission of ordinary care in the safe-keeping and carriage of the goods is not the misfeasance intended by the authorities."

Justice Lamar, who rendered the opinion of the Supreme Court of the United States, in

the case of Railway Co. v. O'Connor, supra, had previously announced in the case of Railway Co. v. Johnson, King & Co., 121 Ga. 231, 48 S. E. 807, while on the Supreme bench of Georgia, that:

"In an action of trover or damages for conversion, the tort-feasor could not take advantage of his * * * wrong, nor lessen the measure of his liability, by invoking an agreed valuation which the plaintiff may have made for the purpose of reducing the freight rate or securing like collateral advantage"—citing the Sloat Case, supra, decided by Justice Lumpkin of that court.

See, on the question, Rosenthal et al. v. Weir, 170 N. Y. 148, 63 N. E. 65, 57 L. R. A. 527; Railway Co. v. Blish Milling Co. (Ga. App.) 82 S. E. 786; Railway Co. v. Bank, 26 Ind. App. 600, 59 N. E. 43.

Hutchinson says:

" * * * Where the carrier has converted the goods, he will be deemed to have thereby abandoned the contract of shipment, and he cannot thereafter insist on a stipulation that his liability shall be limited to a certain sum at which the goods are valued," etc. Carriers, vol. 1 (3d Ed.) § 432, p. 435.

There is a sound public policy, in preventing a common carrier, who has not shipped under the contract, from maintaining a defense of a lesser agreed value for goods, and in allowing the shipper to recover a greater market value, after the carrier has been guilty of converting the goods. The consequence of such a doctrine, if permitted, can be readily discerned; and though the contract, with the agreed valuation, calls for an interstate shipment, the federal Supreme Court has not held, nor tended to hold, the contract applies to conversion. The appellant, however, insists that there is no sufficient proof in this record that it converted the goods of appellee; the only proof on the question being hearsay.

[2] Appellant admits in its answer that it lost the goods, and, of course, if the proof went no further, this case would come within the purview of the decision of Justice Lamar, in Railway Co. v. O'Connor, supra.

The record shows that the appellee Wallace made complaint to the station agent at Memphis, Tex., on account of the nondelivery of the goods. The freight claim agent of the Missouri Pacific Railway Company and the appellant, St. Louis, Iron Mountain & Southern, testified as follows:

"That this box of goods in question was consigned Newport, Ark., to Memphis, Tex. That they traced for it over the main line, Newport, Ark., to Texarkana, as well as over the Texas line and found eventually the box had strayed to Memphis, Tenn., and had been sold as unclaimed goods. That all efforts to trace this box were fruitless. It was afterwards found that it had strayed to Memphis, Tenn., and was reported to him as having been sold for storage and other charges; the sale being made by M. Plough, of Memphis, Tenn. The box sold for gross 50 cents, less commission and drayage, 30 cents, net 20 cents, which was remitted on October 3, 1912, to the local treasurer of this company, St. Louis, Mo."

On cross-examination:

"That he never saw the box in question. That of his own knowledge he knows nothing about what became of the box of goods, and that whatever knowledge he has is based alone on the records as furnished by the Memphis station. That he does not know what the box contained, and that he had no personal knowledge of the sale of the box, but that such information as he has, being obtained from the station records at Memphis, Tenn., and from the person who sold the box, but of his own knowledge he knows that the net proceeds, as reported, 20 cents, was remitted October 3, 1912, to the local treasurer of the company at St. Louis, Mo."

[3, 4] We are not sure that a great deal of the testimony objected to by appellant, as shown by its separate bills of exceptions in this record, does not come within the scope of the principle enunciated by the Supreme Court of New Hampshire, in the case of Burnside v. Grand Trunk Ry. Co., 47 N. H. 554, 93 Am. Dec. 474. It is true that the defendant's freight agent, whose declarations in that cause were held admissible testimony, was the one to whom the goods were delivered for transportation. The freight agent in that case informed the plaintiff that he had ascertained that the goods were at another station; the admissibility of the testimony grounded upon the theory that the declarations came within the scope of the employé's agency. It may be deducible from this record that the freight claim agent was investigating the loss of these goods in pursuance of the claim made by the appellee, and that the investigation of the loss of said goods was within the scope of his authority. However, without ruling upon the particular point, one of appellant's bills of exceptions is in this condition:

"Int. 10. If you have stated that said shipment was reported sold for storage charges, then state the amount it sold for, and what disposition was made of the proceeds of said sale."

In answer to interrogatory 10, the witness says:

"Sold for gross 50 cents, less commission and drayage, 30 cents, net 20 cents; remitted October 3, 1912, to local treasurer of this company, St. Louis, Mo."

The objection that all of this testimony is hearsay is not well taken. The witness, as shown, testified on cross-examination that of his own knowledge he knew that the net proceeds, as reported, 20 cents, were remitted October 3, 1912, to the local treasurer of the company at St. Louis, Mo. A part of the testimony being admissible, the general objection to the whole is untenable. The testimony quoted as having been delivered on cross-examination we presume, of course, was for the purpose of exhibiting that the witness' knowledge of the sale of the box was of a hearsay nature. The statement, however, made by the witness of his own knowledge, as to the remittance of the net proceeds, is connected with a part of his cross-examination clearly identifying the box, as the particular shipment, with the net pro-

ceeds as representing the sale of the same. The witness' testimony as to his efforts in tracing the box was, of course, admissible and it is not shown by the cross-examination as to the remittance of the net proceeds, testified about, as of his own knowledge, that, with reference to same, said witness was not at Memphis, Tenn., from where the remittance was forwarded. We are inclined to think that the conversion was shown.

The bill of exceptions under the eighth assignment of error contains objections to the testimony of appellee's wife, because she had not shown herself qualified to speak as to their value. We think these objections are sufficiently met and answered by the cases (Pecos & Northern Texas Railway Co. v. Grundy, 171 S. W. 318, and Pecos & Northern Texas Ry. Co. v. Porter, 156 S. W. 267) decided by this court.

[5] There is also objection in the bill to a particular part of her testimony, with reference to wearing apparel, clothing, sheets, and pillow cases, that there was not sufficient identification of the same. The proposition referable evidently to this particular testimony says that the same was not admissible because no effort was made, either in the pleadings or the evidence, to give any information as to what kind or character of clothing was in said box. The kind and character of clothing was sufficiently shown by the evidence, and in so far as this proposition is concerned, by the pleading, for a family of eight in number. The appellant, on a cross-examination, made no attempt to obtain from the witness a specific identification of each particular item of wearing apparel, and we think, upon the whole, the judgment of the trial court should be affirmed.

Affirmed.