## SHELTON v. CANADIAN NORTHERN RY. CO.

(Circuit Court, D. Minnesota, Fourth Division. April 19, 1911.)

**1. Trial (§ 136*)—Construction of Foreign Law—Questions of Fact and Law.**

Where the construction of statutes of a foreign country arises in a federal court of the United States, it is a question of fact and not of law.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 318–327; Dec. Dig. § 136.*]

**2. Courts (§ 98*)—Conclusiveness.**

A holding by the Canadian courts that Canadian Railway Act 1906, § 284, providing that a railroad company shall not be relieved by any notice, condition, or declaration if the damages arise from its own negligence, includes contracts is binding on a federal court of the United States required to apply such section.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 324; Dec. Dig. § 98.*]

**3. Carriers (§ 234*)—Contract—Limited Liability—Foreign Contract.**

Since, under the law of Canada, a carrier granting a shipper a free pass to care for his stock and goods in transit, may by contract relieve itself from liability for injuries to such caretaker, even though arising from the negligence of the carrier or its servants, a contract so made in Canada, governing a shipment wholly between Canadian points, would be enforced in an action in the federal court sitting in Minnesota for injuries to a shipper in Canada, though such contract was contrary to the public policy of Minnesota or of the United States in so far as it attempted to exempt the railway from liability for negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 965, 1263, 1538; Dec. Dig. § 234.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CARRIERS (§ 318*)—INJURIES TO PASSENGER—NEGLIGENCE.

Where a passenger was injured in a wreck caused by the failure of a switch tender to throw a switch so that the train would go onto the main line, causing the train to pass onto a side track and run into a train standing thereon, the facts showed ordinary negligence, and not a wanton or malicious injury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1307–1314; Dec. Dig. § 318.*]

5. CARRIERS (§ 307*—INJURY TO PASSENGER—LIMITED LIABILITY.

The public policy of the United States as declared by the Supreme Court allows a railroad company to exempt itself from liability even for its own negligence in the case of a person traveling on a free pass.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1252–1259; Dec. Dig. § 307.*]

6. CARRIERS (§ 158*)—TRANSPORTATION OF GOODS—VALUATION.

Where a carrier's transportation contract provided that it should not be liable for more than $1,200 for the contents of plaintiff's car, it was liable for such proportion of that amount as the value of the property destroyed bore to the value of all the property in the car.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 663–667, 699–710; Dec. Dig. § 158.*]

7. CARRIERS (§ 158*)—CONVERSION OF PROPERTY—CONTRACT.

A carrier's contract for the transportation of property providing that it should only be liable for $1,200 for the contents of a car had no application to a cause of action for the carrier's conversion of property in the car not destroyed, and to which plaintiff was entitled to recover the value of the property at the time it was converted.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 663–667, 699–710; Dec. Dig. § 158.*]

At Law. Action by Sylvester J. Shelton against the Canadian Northern Railway Company. Judgment for a part only of the relief demanded.

The plaintiff, a resident of South Dakota, entered into a contract in Canada with the defendant company for the transportation of a car load of household goods and live stock from Emerson Junction to Lloydminster, both in the Dominion of Canada. The car was wrecked, admittedly through the negligence of the defendant, at a station called Borden, Canada, some 160 miles east of the point of destination. In the wreck the plaintiff was injured, some of the live stock killed, and the household goods more or less destroyed. He brings this suit for damages for the injury to himself and to some of his personal effects, and also to recover the value of that part of the goods not destroyed, which he claims was converted by the defendant to its own use. The contract of carriage which was signed by the plaintiff contained among other things, a recital that the company would not be responsible for an amount exceeding $1,200 for the contents of the car, and the following provision: "In case of the company granting to the shipper or any nominee or nominees of the shipper a pass to ride on the train in which the property is being carried, for the purpose of taking care of the same while in transit and at the owner's risk, as aforesaid, then, as to every person so traveling on such a pass the company is to be entirely free from liability, in respect of his death, injury or damage, and whether it be caused by the negligence of the company, or its servants or employés or otherwise howsoever." The contract also contained the words "Pass man in charge." The defendant denied all responsibility as far as the injuries personal to the plaintiff were concerned.

---

*For other cases see same topic & §‚NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Mr. Larabee and John A. Shelton, for plaintiff.
Hector Baxter, Mr. Clark, and Pierce Butler, for defendant.

WILLARD, District Judge (orally). In this case the first question to be considered is whether the defendant is liable in damages under the law of Canada for the personal injuries received by the plaintiff. It is claimed by the plaintiff that section 284, par. 7, of the Railway Act of 1906, expressly provides that the company cannot exempt itself from liability for loss occurring through its own negligence or that of its servants; and that the provisions of section 340 which allow the Board of Railroad Commissioners to determine to what extent a contract limiting liability may be made, do not authorize that board to infringe the provisions of section 284. In other words, that the Board of Railway Commissioners can allow contracts limiting liability, but not to the extent of limiting liability for accidents occurring by the negligence of the railway company.

[1] It has been suggested that the determination of this question involves a construction of these two provisions of the act, and that consequently it is a question of law and not of fact. But it is well settled that, when a question arises in this court as to foreign law, it is a question of fact and not of law. What the law of Canada is must be proved by evidence.

In this case it is not the duty of this court to compare these two sections, and to determine from a construction of them alone whether the Board of Railway Commissioners had power to authorize a contract releasing a railway company from liability for an injury occurring through its negligence. He would be an unwise man who would undertake to determine from foreign statutes alone what the law of a foreign country was. The law of a foreign country, like our own law, consists not only of statute law, but more in the construction placed upon the statutes by the courts of the country by which they are enacted. There is a good illustration of this proposition in this very case. Section 284 says that the company shall not be relieved by any notice, condition, or declaration, if the damages arise from its own negligence. If I were going to construe that section myself, I should have some difficulty in saying that it included a contract.

[2] The Legislature, it seems to me, has very carefully refrained from the use of the word "contract"; yet it is agreed by the defendant that, by the construction given to the law by the courts of Canada, it does include the word "contract." I am bound, of course, by that construction, and must hold that it does include contracts. So, in determining whether the Board of Railway Commissioners has a right to allow a certain contract which limits the liability of a railway company, I must be governed by the decisions of the Canadian courts upon that subject.

This question may be viewed from two standpoints: The first relates to the effect of the approval by the Board of Railway Commissioners of this contract. It has been proved that the precise contract which was signed in this case by the plaintiff has been approved by the Board of Railway Commissioners. From the deposition of Mr. Chrysler,

which was offered in evidence, it appears that he is a lawyer practicing in Canada, and his testimony as to what the law of Canada is is competent evidence in this case: Also his testimony as to what the legal effect in Canada of these various provisions is is competent. He testified as follows:

"Q. Looking again at Exhibit C, and the form of contract annexed thereto, will you say whether that is such a form of contract as the board under the provisions of the railway act then in force had power to approve?"

That contract is identical with the contract here in question.

"A. Yes; a contract of this description when approved by order of the board has the force of law in Canada as if enacted by statute."

It is therefore proven in the case that this contract has the same force as if it had been included in an act of the Canadian Parliament.

[3] We have, then, here a law of Canada which expressly authorizes this contract, and expressly allows a railway company to limit its liability for the transportation of a person riding on a free pass, even for its own acts of negligence. Under that construction of the law it is apparent that the plaintiff could not recover in Canada if he had brought his action there. In my judgment the same result must be reached if we take the other viewpoint; that is, from the authorities and from the decisions of the Canadian courts.

It has been held in the first place, and it is not disputed by plaintiff, that there can be a limitation of liability, even for the negligence of the company, so far as respects the value of the property injured. It is not denied that the limitation contained in this contract with regard to the value of the property is good, even against the provisions of section 284, and in a case where by the law of negligence the company would be liable. That would go far to show that the provisions of section 284 were not absolutely controlling. It was not beyond the power of the railway company, even without the sanction of the Board of Railway Commissioners to make a contract in some way limiting its liability. But the courts have gone further than that, and they hold that it is competent for railroad companies in the case of persons traveling, as this plaintiff was, upon a free pass accompanying stock, to provide that they shall not be liable for any injury to the person so traveling, even though the injury be caused by the negligent act of the railway company or its servants.

The case of Goldstine v. Canadian Pacific R. W. Co., 21 Ontario Appeal Reports, 576, involved this identical contract. The contract is set out at considerable length, and it turns out to be precisely the same as the contract here. In that case the court said at page 579:

"Quite independently of the special contracts having been approved by the Board of Railway Commissioners, it was, according to the decisions in Hall v. North Eastern R. W. Co. (1875), L. R. 10 Q. B. 437, and Bicknell v. Grand Trunk R. W. Co. (1899), 26 A. R. 431, quite competent for the shippers or their nominee to agree with the defendants to travel at their own risk of personal injury in consideration of being allowed to travel free."

That decision to my mind settles the controversy, so far as the law of Canada is concerned. It not only holds that it is competent for a

railway company to make this contract independently of the approval of the Board of Railway Commissioners, but it also makes a far more important holding, namely; that this man was traveling free, and that he was not being carried for hire.

In the case of Bicknell v. Grand Trunk R. W. Co., 26 Ontario Appeal Reports, 431, it is stated in the syllabus, as follows:

"A contract was made by a railway company for the carriage of cattle to a point on the line of a connecting railway company at a fixed rate for the whole journey. The contract provided that the shipper (or his drover) should accompany the cattle: and that the person in charge should be entitled to a "free pass," but only "on express condition that the railway company are not responsible for any negligence, default, or misconduct of any kind on the part of the company or their servants."

It was held that the condition was valid, and could be taken advantage of by the Canadian Railway Company. The court in its opinion said at page 449 as follows:

"I have come to the conclusion, differing with great respect from the learned trial judge that what the plaintiff was to receive and what he did receive was a free pass. That was his own understanding of his dealing with the company as may be seen from his evidence, although it is now contended that his fare was included in or was part of what he paid for the carriage of the cattle."

This case, as the case of Bicknell against the railway company is important in two respects: In the first place, because it holds that the contract in this case was valid; and, in the second place, because it holds that the man was traveling on a free pass. It has been suggested that the plaintiff was required to accompany his stock, and that this would make a difference, but that same feature appeared in the other case. While the contract may have required the plaintiff to accompany the stock, yet it nowhere requires the company to carry him for nothing. It may be readily conceded to mean that he must accompany the stock; but he must pay his fare, and then he would be in the same condition as any other passenger who was being carried for hire.

I have come to the conclusion therefore that under the laws of Canada the plaintiff cannot recover. This contract was valid, and if he had brought his action in Canada he could not have prevailed. But it is claimed that though he could not have maintained an action in Canada, because he had entered into a valid contract which exempted the company from liability, yet he can escape the onerous conditions in the contract by coming into Minnesota and here maintaining an action; that in Minnesota, or anywhere in the United States, that part of the contract which allowed the railroad company to exempt itself from liability in a case where the injury was caused by its own negligence cannot be put in force, because it is contrary to the public policy of the United States.

The case of Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627, is relied upon more largely perhaps by the plaintiff than any other case. I have examined that and the other cases to which my attention is called, but I find no one of them just like this case. In no one of these cases was the contract made in a foreign country, was it to be performed in the foreign country, and did the accident happen in a foreign

country. Therefore no one of the authorities cited fulfills all the conditions of this case.

In the case of The Glenmavis (D. C.) 69 Fed. 472, which was an action for damages in the transportation of goods from some foreign port to Philadelphia, the accident happened in Philadelphia. It might very well be said that the accident happening in a country where the law prohibited a contract relieving the company from liability for its own negligence, the liability could be enforced, although there was a contract made in a foreign country relieving the company from such liability.

In The Kensington, 183 U. S. 263, 269, 22 Sup. Ct. 102, 104 (46 L. Ed. 190); it appeared that some packages had been shipped from Antwerp to New York. It further appeared that the packages were entirely destroyed on the high seas, and not in any foreign country where the law of such foreign country allowed such a limitation as the Canadian law allowed. It also appeared that the ticket which contained the limitation was not signed by Mrs. Bleeker or by her daughter who were passengers. The Supreme Court stated the question as follows:

"The contention amounts to this: Where a contract is made in a foreign country, to be executed at least in part in the United States, the law of the foreign country, either by its own force or in virtue of the agreement of the contracting parties, must be enforced by the courts of the United States, even although to do so requires the violation of the public policy of the United States. To state the proposition is, we think, to answer it."

The contract in this case was not to be executed in the United States; it was not only made in Canada, but was to be entirely executed in Canada.

The case of Liverpool Steam Co. v. Phœnix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788, is much relied upon by the plaintiff. It was claimed in that case that the law of England where it may be said the accident happened allowed a limitation of liability even in case of negligence on the part of the carrier. There was no proof, however, in the court below as to what the law of England was. There was an attempt made after the case had been closed to open it, and permission was asked to prove the law of England, but it was denied. The court said that it would not disturb that ruling; but it did proceed further, and passing that point, discussed the general question as to the conflict of laws. It said on page 461 of 129 U. S., on page 479 of 9 Sup. Ct. (32 L. Ed. 788):

"Our conclusion on the principal question in the case may be summed up thus: Each of the bills of lading is an American and not an English contract."

It appears in that case that the contract was made in America, and the shipment of the goods was from America to England.

"And so far as concerns the obligation to carry the goods in safety, it is to be governed by the American law, and not by the law, municipal or maritime, of any other country. By our law, as declared by this court, the stipulation by which the appellant undertook to exempt itself from liability for the negligence of its servants is contrary to public policy and therefore void."

That statement takes that case out of the rule which must govern the decision in this case. Here there was no contract made in the

United States to be performed in Canada, but it was a contract made in Canada, to be performed in Canada and was performed there. I see as I stated before, nothing in any of those cases which necessarily holds that this contract would not have to be enforced in this country exactly the same as it would have to be enforced in Canada. The case of Chicago, Burlington & Quincy Railway Co. v. Gardiner, 51 Neb. 70, 70 N. W. 508, was one where there was under discussion a statute of Nebraska which did not allow a common carrier to limit its liability for negligence. It does not appear from the report where the accident happened. The goods were transported from Peoria to Nebraska, but it does not appear whether the accident happened in Nebraska, in Iowa, or in Illinois where the statute allowed such limitation. But it is urged very strongly that the Lockwood Case held that the plaintiff in that case, the defendant in error in the court above was not a free passenger, but was being carried for hire, and it is insisted that that must control in this action. There are two reasons why in my judgment that case does not control. The first is that it does not appear from the facts in the Lockwood Case that they were the same as they are in this case. It is proven in this case that the contract was made at a rate of $35 and some cents; that it was a reduced rate; and that it was the rate at which the property was to be carried by the railroad company whether a man went with the property or not. Under classification No. 14 the railroad company was entitled to charge that amount for carrying the property, and was not required to carry a man with it for that amount. It seems to me that it would necessarily follow that if the railroad company was entitled to $35 for carrying the property, and they carried him in addition, they carried him for nothing. But the more controlling reason is that the courts of Canada have held that under this classification and under this precise contract the man is being carried free, and is not being carried for hire.

So admitting the entire force of the Lockwood Case, and admitting that a contract like the contract in the Lockwood Case is contrary to public policy, and would not be enforced in this country, although the contract was made and was to be performed in Canada, admitting all that, yet to my mind the fact that he was being carried free takes this case out of that rule. And the decision here must be governed not by that case, but by the case of Northern Pacific Railway Co. v. Adams, 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513. It was suggested in the argument that there was no proof of negligence in that case, and that there was no negligence. But I think the case does not bear out that statement. On page 448, of 192 U. S., on page 409 of 24 Sup. Ct. (48 L. Ed. 513), Mr. Justice Brewer says:

"As the negligence of the company, found by the jury to have caused the death," etc.

So it seems to necessarily follow that there was some negligence. Then again on page 451 of 192 U. S., on page 410 of 24 Sup. Ct. (48 L. Ed. 513) the court said:

"We shall assume, however, but without deciding, that the jury were warranted, considering the absence of the vestibule platform and the high rate

of speed in coming round the curve in finding the company guilty of negligence; but clearly it was not acting either willfully or wantonly in running its train at this not uncommon rate of speed, and all that can at most be said is that there was ordinary negligence."

It was suggested that in this case there was something more than ordinary negligence, but I do not think that the evidence would justify the jury in finding that there is anything more than negligence. Certainly there was no evidence to show that this engineer wantonly and maliciously ran his train onto the side track and into another train.

[4] It would be going a great way to say that the failure of the switch tender to throw the switch so that the train would go on the main line was a wanton and malicious neglect. The only thing that can be said is that some one was careless, and that is admitted. In the Adams Case the Supreme Court held that a contract by which a railroad company agreed to carry a passenger free was not contrary to public policy; so that even assuming that the courts of this country would not enforce a contract made and to be performed in a foreign country which was against the public policy of this country, yet we have nothing here that is against the public policy of this country.

[5] The public policy of the United States as declared by the Supreme Court allows a railroad company to exempt itself from liability, even for its own negligence, in the case of a person traveling on a free pass. That is the case here; the plaintiff cannot recover at all on account of his personal injuries, and therefore I shall direct the jury accordingly.

[6] Upon the question of the loss of property I shall charge the jury that the railroad company is liable for the value of the property which was destroyed by the collision, and that the loss is to be ascertained by determining what proportion that part of the property which was destroyed was to the entire amount of property carried. If they decide that it is ten-seventeenths of the entire amount carried, then the plaintiff is entitled to recover ten-seventeenths of $1,200, which was the maximum amount fixed by the contract as the value of the contents of the car.

[7] I have also indicated that I shall charge the jury that as to the property not destroyed the contract has no binding force. The cause of action stated in the complaint is for conversion—conversion of the property after the accident happened; and for that conversion the defendant is liable for what the jury may find was the value of that property at the time it was converted.

I have also stated what I shall charge the jury with reference to the value of the horses. I have not seen any occasion to change my mind as to that.

I do not think that there was any obligation on the part of the plaintiff to pay the feed bill. Nor was there any evidence to show what the feed bill was, or that it was a reasonable bill. All that the evidence shows is that the station agent told the plaintiff that the feed bill amounted to $165, but it does not show that that was a reasonable charge for taking care of the horses.