## P. W. SANDS v. AMERICAN RAILWAY EXPRESS COMPANY.[1]

### No. 23,060.

### January 19, 1923.

**When express company is liable for conversion of shipment at its full value.**

A carrier by express, which ships property to the wrong destination, where it is not delivered, and later ships it to its usual place of selling unclaimed express, though the consignee is demanding it, and sells it and receives the proceeds after the commencement of an action and before issue joined, is chargeable with an actual conversion, and is liable for full value, although the shipment was made upon a released value.

### May 25, 1923.

**Liability limited to declared value where receipt is accepted by shipper.**

1. Under the Cummins amendment of August 9, 1916, 39 St. 441, c. 301, Comp. St. § 8604a, the liability of a carrier is limited to the value declared in the express receipt as the released value, if the shipper accepts the receipt from the carrier, though he does not sign it.

**Former decision followed.**

2. The former decision holding the defendant liable for an actual conversion and for full value is adhered to.

Action in the district court for Stearns county to recover $1,726 for loss of three trunks. The case was tried before Roeser, J., who

[1]Reported in 197 N. W. 721.

at the close of the testimony denied the motion of defendant for a directed verdict of $250, and a jury which returned a verdict for $1,588.50. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Henry H. Sullivan*, for appellant.

*Paul Ahles*, for respondent.

DIBELL, J.

Action to recover for the loss of goods of the plaintiff delivered to the defendant at Detroit, Michigan, for shipment to Sauk Rapids, Minnesota. There was a verdict for the value of the goods. The defendant appeals from the judgment.

On June 8, 1920, the plaintiff delivered to the defendant at Detroit, Michigan, three trunks containing household belongings to be sent to Sauk Rapids, Minnesota. They were not delivered. The defendant does not disclaim liability. It contends that the shipment was valued and that a greater recovery than the released value of $250 cannot be had. A receipt was delivered to the plaintiff. It shows a declared value of $250. It was not signed by the plaintiff. The circumstances attending its making and delivery are left uncertain. The parties differ as to the effect of the Cummins Amendment of August 9, 1916. U. S. Comp. St. § 8604a. In view of the facts now to be mentioned, and the conclusion which we reach from them, a construction of the statute, and its application to the facts in evidence, is unnecessary.

The trunks did not reach Sauk Rapids. The plaintiff notified the express company and a search of some kind commenced. Nothing resulted. The plaintiff suggested to the company that it look to other stations on its line having the word "Rapids" as a part of the name. If anything was done it did not bring results. In April, 1921, the plaintiff commenced suit. While the action was pending and before answer the trunks, which had been sent to Grand Rapids, Minnesota, and so far as appears were there all the time, were sent to the Twin Cities as unclaimed express, and about April 30 were sold, the defendant taking the proceeds. The trunks were opened.

Some of the articles were sold separately. It fairly appears that there were in the trunks letters which would have shown the name of the owner and that Sauk Rapids was the destination. It is not necessary to locate individual fault. The company knew what its employes knew. The property was in its possession. It was not lost nor injured nor destroyed. There was a continuous demand for 9 or 10 months. Under circumstances such as narrated there was a conversion as a matter of law and the company should respond for full value. See Central of Georgia R. Co. v. Chicago Portrait Co. 122 Ga. 11, 49 S. E. 427, 106 Am. St. 87; Skelton v. Canadian N. R. Co. 189 Fed. 153; Georgia R. Co. v. Johnson, King & Co. 121 Ga. 231, 48 S. E. 807; Merchants & Miners Transp. Co. v. Moore & Co. 124 Ga. 482, 52 S. E. 802.

We do not fail to note that the action was not brought upon the theory of conversion. The evidence was in without objection. There is no dispute as to the controlling facts. An amendment could have been made at any time. There can be but one result.

Judgment affirmed.

After reargument, on May 25, 1923, the following opinion was filed:

DIBELL, J.

The former decision was placed upon the ground that there was an actual conversion, for which the defendant was liable, irrespective of the construction to be placed upon the Cummins Amendment of August 9, 1916, 39 St. 441, c. 301, U. S. Comp. St. § 8604a. The effect of the amendment was not considered. The question of actual conversion was hardly considered in the briefs and arguments, and was decided without the aid of the views which counsel were entitled to present. A rehearing was granted. The two questions are:

(1) Was it necessary under the Cummins Amendment of August 9, 1916, 39 St. 441, c. 301, U. S. Comp. St. § 8604a, that the express receipt be signed by the shipper in order that he be bound by the declared value?

(2) Was there such an actual conversion that there could be a recovery of actual value irrespective of the declared or released value?

1. The shipper did not sign the express receipt. The drayman delivered the shipment to the express company, received a receipt with a declared value of $250, which he returned to the shipper. It was not signed by the shipper. The proper schedules of authorized and established rates were filed with the Interstate Commerce Commission. After the argument, but before the decision, American Ry. Exp. Co. v. Lindenburg, 260 U. S. 584, 43 Sup. Ct. 206, 67 L. ed. ——, was decided. It was there held that the receipt need not be signed by the shipper to be binding upon him, and that his acceptance of the receipt, the contents of which he was presumed to know, was an assent to its terms making it the written agreement of the parties. This case reversed Lindenburg v. American Ry. Exp. Co. 88 W. Va. 439, 106 S. E. 884, which was cited on the original hearing. The Federal decision is controlling. The plaintiff is limited in his recovery to the declared value, though he did not sign, unless the carrier in the particular case is liable as for an actual conversion.

2. The question now is whether the sale of the express under the circumstances stated in the original opinion constitutes such a conversion as renders the express company liable irrespective of the declared value. The Georgia cases cited in the opinion hold the affirmative. That of Central of Georgia R. Co. v. Chicago Portrait Co. 122 Ga. 11, 49 S. E. 427, 106 Am. St. 87, involving the sale of freight shipped to its point of designation and then reshipped and sold as unclaimed freight, is quite in point. St. Louis R. Co. v. Wallace (Tex. Civ. App.) 176 S. W. 764, is much the same. The case of Shelton v. Canadian N. R. Co. 189 Fed. 153, involving a Canadian contract, looks in the same direction.

On the reargument attention is specially directed to Georgia F. & A. R. Co. v. Blish Milling Co. 241 U. S. 190, 195, 197, 36 Sup. Ct. 541, 60 L. ed. 948; Moore v. Duncan, 237 Fed. 780, 150 C. C. A. 534; and D'Utassy v. Barrett, 219 N. Y. 420, 114 N. E. 786, 5 A. L. R. 979. In Moore v. Duncan the rule limiting liability to the

declared value was applied where goods were stolen by the carrier's employes. The same holding was made in the D'Utassy case, and in Henderson v. Wells-Fargo (Tex. Civ. App.) 217 S. W. 962. The Blish case involved a bill of lading requiring a notice of claim for misdelivery to be made within a stated time. The railway company delivered the freight to the consignee without the surrender of the bill of lading or accompanying draft. Upon unloading the consignee found that the freight was damaged by water. The railway then retook possession and sold. The question was whether the Blish company gave the required notice. A telegram sent by it was held sufficient and the railway was held liable. In commenting upon the requirement of notice as a condition of liability the court said [241 U. S. 195]:

"It may be urged that the carrier is bound to know whether it has delivered to the right person or according to instructions. This argument, however, even with respect to the particular carrier which makes a misdelivery, loses sight of the practical object in view. In fact, the transactions of a railroad company are multitudinous and are carried on through numerous employees of various grades. Ordinarily the managing officers, and those responsible for the settlement and contest of claims, would be without actual knowledge of the facts of a particular transaction."

And again the court says [241 U. S. 197]:

"The action is in trover, but as the state court said, 'if we look beyond its technical denomination, the scope and effect of the action is nothing more than that of an action for damages against the delivering carrier.' 15 Ga. App. p. 147. It is urged, however, that the carrier in making the misdelivery converted the flour and thus abandoned the contract. But the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal Act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the

Act and open the door to the very abuses at which the Act was aimed."

The case before us is one of a mistaken shipment and a consequent nondelivery. The shipment did not reach its destination because it was misrouted. It went with other unclaimed property, apparently in the customary way, for sale. It was unclaimed because wrongly routed. The majority of the court, upon a full reconsideration, is of the view stated in the original opinion that the defendant is liable for an actual conversion and that the damages are not limited to the declared value.

The defendant's contention that the declared value limits the amount of recovery is not defeated by a suggestion that, if a contrary doctrine were held, the carrier might refuse delivery after the completion of the contract of carriage, sell at more than the declared value, and so make a profit; or that it might sell merchandise in its care for carriage when it could get more than the declared value and keep the difference; or that it might during the course of carriage or afterwards confiscate freight for its own needed use, coal, for instance, and then insist that its liability was measured by the declared value; or that it might deliver shipper's order freight, without the surrender of the bill of lading and the payment of the accompanying draft, and when sued in conversion insist that the damages recoverable were fixed by the declared value, though less than the value of the converted property. The defendant's contention leads to the recognition of no such consequences, nor is it anticipated that a carrier is likely to furnish the facts making such a contention by a shipper possible. Perhaps such instances as those just noted might be viewed as a departure from the contract of carriage, and the commission of a wrongful act in the carrier's interest and for its profit. There is ground for argument that a case like this should be distinguished from others where there is an actual loss or destruction, and a consequent failure to deliver, caused by mishap or negligence whether ordinary in degree or gross or wilful, and put among those where the carrier consciously takes the property entrusted to it for a specific purpose and applies it to its own use or profit, or to that of another, either in the course of car-

riage or after it has reached its destination, thereby departing from the contract to which a limited recovery was attached through the declaration of value. Some cases have such distinction in mind.

Mr. Justice HOLT and the writer are of the opinion that under facts such as are involved in the case before us the shipper is limited to the declared value. They are of the view that a carrier may consciously deal with the property in disregard of the contract of carriage, and become liable for an actual conversion, as, for instance, in the possible situations suggested above, but they do not think such a situation is here. They do not see that the defendant's liability is different from what it would be had the express remained at Grand Rapids unfound. They therefor dissent from the result reached by the majority.

The court adheres to the former decision.

Judgment affirmed.