[Southern Railway Co. v. Webb.]
and
[Webb v. Southern Ry. Co.]

# Southern Railway Co. *v.* Webb.
# and
# Webb *v.* Southern Ry. Co.

*Action against Railroad Company, as Common Carrier, for Failure to Deliver Live-stock to Consignee.*

1. *Action against common carrier; damages recoverable under count in Code form.*—In an action against a common carrier, to recover for the breach of a contract of affreightment, in failing to deliver property shipped to consignee, under a count in the complaint, which is in the form prescribed in the Code for a suit against a common carrier on a bill of lading, a recovery may be had, in the event of the breach of the contract, for damages proximately resulting from such breach, which includes the depreciation of the market value of the property.

2. *Common carrier; agency for shipper.*—Where the shipper of live-stock, in a letter to the agent of the common carrier, directs to whom the stock was to be consigned, a person, who is employed by the shipper to deliver the stock for shipment and to put them in the car, is not an agent of the shipper, authorized to change the contract of affreightment so as to direct the delivery of the stock to a person other than the one designated in the letter written by the shipper to the agent of the common carrier.

3. *Common carrier; duty to deliver stock to consignee and no other person.*—A common carrier is under duty to deliver goods or live-stock, shipped over its line, to the consignee designated in the contract of affreightment, and the delivery by it, of property shipped over its line, to another person constitutes a conversion, rendering the carrier liable for any damages proximately resulting from the delivery to such other person.

4. *Common carrier; duty to unload live-stock imposes no obligation to see a delivery to consignee.*—Where a contract of affreightment stipulates that the plaintiff should accompany the live-stock shipped over the common carrier, and unload them upon their arrival at their destination, such stipulation does not put upon the shipper the obligation of seeing that the live-stock was delivered to the consignee, and not to a stranger.

[Southern Railway Co. v. Webb.]
.and
[Webb v. Southern Ry. Co.]

5. *Same; contract of affreightment; when written notice is required.*
A stipulation in the contract of affreightment that "As a condition precedent to the right of the owner and shipper to recover any damages for any loss or injury to said live-stock shipped," he should give notice *in writing* of his claim therefor, is not applicable, where the shipper seeks to recover damages, resulting from the common carrier delivering the live-stock shipped to some other than the consignee named in said contract.

6. *Common carrier; breach of contract of affreightment; damages recoverable.*—Where a common carrier has broken its contract of affreightment, by delivering live-stock shipped over its line to a party other than the consignee named in said contract, the shipper and owner of such stock is entitled to recover all damages which proximately resulted from such wrongful delivery; and the amount paid to the person, to whom the stock was delivered, for feeding and sustaining the stock after their delivery, and before they were obtained by the shipper, which payment was necessary to regain possession of the stock, is recoverable as proximate damages; but the expenses, incurred by the owner and shipper for a trip to the place of destination in order to obtain possession of the stock, are not recoverable.

7. *Same; same; same.*—In such a case, the difference in the market value of the live-stock at the place of destination, from the time of their arrival to the time the owner and shipper regained possession of them, is recoverable; and this is true, although the contract of affreightment. contained the stipulation that, "Should damage occur for which the company may be liable, the value at the place and date of shipment shall govern the settlement."

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. J. A. BILBRO.

This action was brought by L. T. Webb against the Southern Railroad Company, to recover damages for the alleged breach of a contract of affreightment. The complaint contained two counts. The first count was in the Code form against a common carrier upon a bill of lading. The second count sought to recover damages for special breaches of the contract of affreightment, by reason of the defendant failing to deliver the car load of hogs shipped to the assignees. The damages claimed were sufficiently shown in the opinion.

20s

[Southern Railway Co. v. Webb.]
and
[Webb v. Southern Ry. Co.]

The defendant pleaded the general issue and several special pleas. The second special plea was in words and figures as follows: "It did not contract with plaintiff in the manner and form as alleged." The 3rd, 4th and 5th special pleas set up the fact that the plaintiff did not keep and perform the stipulation of said contract, mentioned in count two, in that he failed to unload said hogs, and failed to ride on the same freight train, and that he did not give notice, in writing, of his claim, as required by said contract. The 6th special plea set up that, on the day of the shipment, plaintiff's agent, one Robinson, modified the contract of affreightment by directing that said hogs should be shipped to Askew & Mixon, care of Union Stock Yards, and that there was endorsed on the way bill by defendant's agent the fact that they were so shipped.

The contract of affreightment, which was introduced in evidence, contained the following stipulations: "And it is further agreed that the owner and shipper, or his agent or agents in charge of stock, shall ride upon the freight train on which the stock is transported, and that he does assume and release said railroad companies from all risk of personal injury while upon or about the train of the companies. And it is further agreed that, should damages occur for which the companies may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed,    *    *    *    *    *    *    *    *    *    for hogs, $5.00 each. And it is further agreed that, as a condition precedent to the right of the owner and shipper to recover any damage for any loss or injury to said live stock, he will give notice, in writing, of his claim therefor to the agent of the railroad company actually delivering said stock to him, whether at the point of destination or at any intermediate point, where the same may be actually delivered, before said stock is removed from the place of destination above mentioned, and before said stock is intermingled with the other stock."

Against the objection and exception of the defendant, the plaintiff introduced evidence tending to show that,

before he could obtain possession of the car load of hogs, which had been delivered to the Brady Union Stock Yards, he was required to pay to said stock yards the sum of $73.62, which was the feed bill, charged by said stock yards, for feeding the hogs after their delivery. That it was necessary for him to make a special trip to Atlanta, the expenses of which were shown; and that there was considerable loss in the weight of the hogs during their detention. The facts in the case, necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

Among other charges requested by the defendant, to the court's refusal to give each of which the defendant separately excepted, was the general affirmative charge in favor of the defendant. The court, in its oral charge to the jury, instructed them, in effect, that the plaintiff was entitled to recover the amount paid to the Brady Union Stock Yards and the expenses of his trip to Atlanta, and the amount or value of the loss in weight of the hogs, between the time they should have been delivered to Askew and Mixon and the time they were received by the plaintiff, based on Paint Rock market. To this portion of the court's oral charge, the defendant separately excepted. The court, in its oral charge, also instructed the jury that plaintiff could not recover anything on account of the fall in price of hogs in Atlanta, and that, under the contract, the recovery must be based on the price of hogs at Paint Rock, Alabama; and it appeared from the evidence that there had been no depreciation in the market value of hogs at Paint Rock. To this portion of the court's oral charge to the jury, the plaintiff separately excepted.

There were verdict and judgment in favor of the plaintiff, assessing his damages at $120.26. The defendant made a motion for a new trial, upon the grounds that the verdict of the jury was excessive, and was contrary to the evidence. The motion was overruled, and the defendant duly excepted. The defendant appealed, and assigned as error the several rulings of the trial court to which it reserved exceptions. The plaintiff prosecuted a cross-

appeal, and assigned as error the refusal of the court to admit the testimony as to the depreciation as to market value of hogs at Atlanta, between the time the said hogs were delivered to the Brady Union Stock Yards and the time that they were received from the plaintiff; and that part of the court's oral charge, which instructed the jury that the plaintiff was not entitled to recover the difference in the market value of the hogs between said times.

HUMES, SHEFFEY & SPEAKE, for the Southern Railway Company.—Under the first count of the complaint, the plaintiff was not entitled to recover; because the evidence showed a special contract.—*L. C. & St. L. Ry. Co. v. Parker*, 123 Ala. 683.

The contract was performed by carriage to the freight depot in Atlanta, and being ready to deliver there on payment of charges; any agreement or custom to deliver at Askew & Mixon's yard, if shown, was not admissible to vary the terms of the contract. Garner, the agent, had no authority to make such an agreement. And the agreement or custom, if proven and valid, would not enure to plaintiff's benefit, but could only be claimed or taken advantage of by Askew & Mixon. The suit is not by them.—*Melbourne & Troy v. L. & N. R. R. Co.*, 88 Ala. 443, 444, 448; *Benson v. Gray*, 154 Mass. 391; *Myrick v. Mich. Cen. R. R. Co.*, 9 Biss. 44.

The evidence did not show that plaintiff gave notice of his claim, before the institution of the suit, as required by the terms of the contract; that was a condition precedent to a right to recover.—1 Rap. & Mack's Digest of Ry. Law, p. 770 *et seq.*; *W. Ry. of Ala. v. Harwell*, 91 Ala. 341, 347.

But the plaintiff's failure to accompany the hogs in the cars of transportation was sufficient to prevent his recovery.—*W. Ry. of Ala. v. Harwell*, 91 Ala. 341, 348-9; *C. R. & B. Co. v. Smitha*, 85 Ala. 47, 51, 52; 1 Rap. & Mack's Digest of Ry. Law, pp. 763, 764.

It cannot be doubted that plaintiff is bound by the contract sued on by him, made and accepted by his agent Robinson, and is bound by all its terms—both as to accompanying the stock, notice before instituting suit, etc. "A principal, who seeks to avail himself of a contract made by another for him, is bound by the representations made and the methods adopted by the agent to effect such contract."—*Williamson v. Tyson,* 105 Ala. 644; *Atwood v. Wright,* 29 Ala. 346.

It cannot be doubted that, if the way-bill constitutes part of the contract and plaintiff is bound by it, then there was no breach of the contract, as the words, "Care Union Stock Yards," authorized the delivery to, or at, Union Stock Yards, and that was done.—*M. & G. R. R. Co. v. Prewitt,* 46 Ala. 63, 67-8.

It is well settled, that a party to a contract cannot recover damages, which he could have reasonably prevented or avoided, or which it was his duty under the contract to avoid.—1 Sedg. on Cont., 8th ed., sec. 201, 205, *et seq.*; *Strauss v. Meertief,* 64 Ala. 299; *Gooden v. Moses,* 99 Ala. 230; *Hodges v. Fries,* 15 So. Rep. 682; 112 Ala. 436; 32 Ala. 54.

Had the shipper or his agent been with the hogs, he could have changed the instructions as to destination at any time.—88 Ala. 443, 448; Hutchinson on Carr., sec. 337, 394.

The only question, presented by the cross appeal, is whether or not plaintiff could recover by reason of fall in market price *at Atlanta,* between the time the hogs should have been delivered there, and the time plaintiff received them. The contract provides "That, should damage occur for which the companies may be liable, the value at the place and date of shipment shall govern the settlement."

This clause evidently contemplates damage of any kind —whether by failure to deliver, delay in delivery, injuries to the stock, or otherwise. It may be true, as contended for plaintiff, that the *date* of shipment could not control

in a case of this sort (though even this we do not concede), and still the *place* of shipment is applicable in all cases, whether in depreciation of market value or otherwise.

This clause has, in many cases, been held valid and binding on the shipper. It is not void, as stipulating against liability for negligence.—*L. & N. R. R. Co. v. Oden*, 80 Ala. 38, 44; *L. & N. R. R. Co. v. Henlein*, 52 Ala. 606; *L. & N. R. R. Co. v. Sherrod*, 84 Ala. 178; *W. Ry. of Ala. v. Harwell*, 91 Ala. 341, 348; *So. Ry. Co. v. Jones*, 132 Ala. 437.

VIRGIL BOULDIN, for L. T. Webb.—A failure to deliver property to the consignee is a conversion.—Hutchinson on Carriers, Sec. 344.

In a case like this, it would manifestly be to the interest of the carrier to convert the property, pay the shipper the market price at "Place and date" of shipment, and pocket the remainder.

In this case the property, after conversion by the carrier, was reclaimed by the owner, upon express stipulations that he retain any claim for damages by reason of the conversion. It is analogous to other cases of conversion, where the property is reclaimed. The net value of the property reclaimed goes merely by way of mitigation of damages.—*Renfro v. Hughes*, 69 Ala. 581.

TYSON, J.—This action is for the recovery of damages for the breach of a contract of affreightment for a car of hogs received by defendant at Paint Rock, in this State, to be transported by it to Atlanta, Georgia, and there delivered by it to Askew & Mixon, to whom it is alleged the hogs were consigned, as plaintiff's agents.

The special breach alleged in the second count of the complaint is, that the defendant failed to deliver the hogs to the consignees, but delivered them to another and different person, to-wit; Brady Union Stock Yards. The damages, sought to be recovered under this count, were charges, amounting to $73.62, exacted by the

Brady Union Stock Yards of plaintiff, before he could regain possession of his hogs, the loss in the weight of the hogs, and the decline in their market price during their detention, expenses incurred by plaintiff in making a trip to Atlanta to regain their possession, and counsel fees for bringing this action.

The trial court, it appears, allowed a recovery of all these damages, except for counsel fees and a decline in the market price of the hogs.

It is first insisted by the Railway Company that under the contract of affreightment which is in writing, no recovery can or ought to be allowed, and, therefore, the affirmative charge requested by it should have been given. Preliminary to a discussion of this question, it may be well to say that the evidence tends to support each claim for damages which the plaintiff was permitted to recover, and, as we will show later on, a breach of the contract.

The case of *N. C. & St. L. Ry. Co. v. Parker*, 123 Ala. 683, is relied upon as authority in support of the contention that no recovery can be had on the first count of the complaint, which is in Code form, because the evidence shows a special contract, whereas a common liability is counted on. This case was overruled on this point by *L. & N. R. R. Co. v. Landers*, 135 Ala. 504, where it was held that the Code form was broad enough to cover bills of lading containing special stipulations. It can scarcely be doubted that a recovery may be had on this count for at least nominal damages, if a breach of the contract was shown, and indeed there is no good reason why the damages resulting in the decreased weight of the hogs and their market value during their detention may not be recovered under it, unless by the terms of the contract their market price was to be determined at Paint Rock instead of Atlanta, which will be discussed when we consider the plaintiff's assignment of error.

Was there a breach of the contract shown? The bill of lading designated Askew & Mixon as the consignees; the hogs were admittedly not delivered by defendant to

them, but to the Brady Union Stock Yards. The way-bill showed them to be consignees, and also showed the words "Union Stock Yards" written in pencil below the names and address of the consignees, which appears to have been construed by the agents of defendant as directing their delivery of the hogs to the Union Stock Yards for the consignees. After the contract of affreightment was executed, it appears that one Robinson, who signed it for plaintiff, and to whom it was delivered for plaintiff, directed the words "Union Stock Yards" to be written on the way-bill. It is, therefore, insisted that Robinson, being the agent of the plaintiff to deliver the hogs for shipment, was authorized to change the contract of affreightment and to direct their delivery to the "Union Stock Yards." Robinson is shown affirmatively and without dispute not to have any such authority. Plaintiff had, in a letter to the agent, directed to whom they were to be assigned. The contract was written, signed and delivered, in accordance with his directions. Robinson was not his agent to make any contract for their shipment at all. His duties were simply to drive the hogs to Paint Rock and put them into the car, which he had previously ordered. It is true he signed the plaintiff's name to the contract, but this was without authority. But the plaintiff, having received the contract, must be held to have ratified his act in this respect, but not to have ratified its modification, which did not appear upon it, but only on the way-bill, which the plaintiff never saw. Nor was it otherwise shown that plaintiff knew of the change of the contract, when he received it from Robinson. At best, Robinson, under the evidence, was a special agent, and the defendant was bound at its peril to ascertain the extent of his authority. 3 Brick. Dig. p. 22, § 54.

Robinson being without authority to change the contract of affreightment, as to the delivery of the hogs, a breach is shown. For undoubtedly the defendant was under as much obligation to deliver the hogs to the right person, as it was to deliver them in a reasonable time

and at the proper place. And the delivery by it of them to the wrong person was a conversion. The question is not one of due care, for the carrier, like any other bailee, acts at his peril in making the delivery.—Angell on Carriers, § 324; Wood's Brown on Carriers, p. 319; 6 Cyc. p. 472.

"No circumstances of fraud, imposition or mistake will excuse the common carrier from responsibility for a delivery to the wrong person. The law exacts of him absolute certainty that the person to whom the delivery is made is the party rightly entitled to the goods, and puts upon him the entire risk of mistakes in this respect, no matter for what cause occasioned, however justifiable the delivery may seem to have been, or however satisfactory the circumstances or proof of identity may have been to his mind; and no excuse has ever been allowed for a delivery to a person for whom the goods were not directed on consignment."—Hutchinson on Carriers, 344.

In the case of *North Penn. R. R. Co. v. Commercial Bank,* 123 U. S. 727, the Court, speaking to the point here under consideration, said: "The duty of a common carrier is not merely to convey safely the goods intrusted to him, but also to deliver them to the party designated by the terms of the shipment or to his order, at the place of destination. There are no conditions which would release him from this duty, except such as would also release him from the safe carriage of the goods. The undertaking of the carrier to transport goods necessarily includes the duty of delivering them. A railroad company, it is true, is not a carrier of live stock with the same responsibilities which attended it as a carrier of goods. The nature of the property, the inherent difficulties of its safe transportation and the necessity of furnishing to the animals food and water, light and air, and protecting them from injury to each other, impose duties in many respects widely different from those devolving upon a mere carrier of goods. The most scrupulous care in the performance of his duties will not always secure the carrier from loss. But, notwithstanding the difference in duties and responsibilities, the railroad company,

when it undertakes generally to carry such freight, becomes subject, under similar conditions, to the same obligations, so far as the delivery of the animals which are safely transported is concerned, as in the case of goods. They are to be delivered at the place of destination to the party designated to receive them if he presents himself, or can with reasonable efforts be found, or to his order. No obligation of the carrier, whether the freight consists of goods or live stock, is more strictly enforced. * *. * *. If the consignee is absent from the place of destination or cannot, after reasonable inquiry, be found, and no one appears to represent him, the carrier may place the goods in a warehouse or store with a responsible person, to be kept on account of and at the expense of the owner. He cannot release himself from responsibility by abandoning the goods or turning them over to one not entitled to receive them. * * * * * Diligent inquiry for the consignee, at least, was a duty and no inquiry was made. Want of notice is excused when the consignee is unknown or is absent, or cannot be found after diligent search. And if, after inquiry the consignee * * * cannot be found, the duty of the carrier is to retain the goods until they are claimed, or to store them prudently for and on account of their owner. He may thus relieve himself from the carrier's responsibility. He has no right under any circumstances to deliver to a stranger."

This quotation so satisfactorily announces the principle of law applicable to facts of the case, it would seem to be useless to pursue this phase of the inquiry further.

But it is said that, by the terms of the contract, it was plaintiff's duty to accompany the hogs and unload them upon their arrival at Atlanta, and, had he complied with his duty in this respect, there would have been no misdelivery. This provision of the contract did not put upon plaintiff the obligation of seeing that the hogs were delivered to the consignee and not to a stranger. The obligation of defendant to deliver to Askew & Mixon was absolute, and not conditioned upon plaintiff accompanying the car.

It is also urged that the defendant was entitled to retain the hogs until the freight was paid upon them. This is undoubtedly true, but it did not retain them, but converted them.

A mere reading of the clause of the contract, relating to the plaintiff giving notice of his claim before bringing suit, will suffice to show that it was not intended to apply and does not apply to the claim for damages sought to be enforced here.

The affirmative charge requested by defendant was properly refused.

The next contention is, that the $73.62, paid by plaintiff to Brady Union Stock Yards, were not recoverable damages. There is no merit in this insistence. They are claimed in the complaint and the evidence tends to show that plaintiff paid the sum and that its payment was necessary to regain the possession of his property, which defendant had tortiously delivered to that concern. That they were proximate, and not remote, is practically admitted.—*Renfro v. Hughes,* 69 Ala. 581.

We are of opinion, however, that the expenses incurred by plaintiff, on his trip to Atlanta, are not recoverable. They are not the proximate or natural consequence of the breach of the contract.—*Jackson v. Smith,* 75 Ala. 97; *Foster v. Napier,* 74 Ala. 393. The allowance of a recovery of them by the court as damages is error for which the judgment must be reversed.

The plaintiff also prosecuted an appeal from the judgment and insists that error was committed in not permitting him to show that, during the period of detention of the hogs at the Brady Union Stock Yards, their market price in Atlanta had declined from 1-2 to 3-4 of a cent per pound. This evidence shows that there had been no change in the market price of hogs at Paint Rock, the point of shipment, and that the hogs were shipped by plaintiff to his brokers, Askew & Mixon, for sale on the Atlanta Market. The breach of the contract by defendant, as we have shown, occurred in Atlanta, and not in Paint Rock. The contract of affreightment contained this clause: "And it is further agreed that, should dam-

age occur for which the company may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed * * * for hogs $5.00 each."

Doubtless the ruling of the court was based upon this clause of the contract, which was construed by him to change the common law rule fixing the measure of damages in this character of cases. Obligations of this kind are strictly construed against the carrier, and, unless the language employed is so definite and certain as to leave no room for the operation of the common law rule, that construction will not be adopted. In other words, it must clearly appear that it was the intention of the parties that the rule of the common law was not to govern in ascertaining the damages suffered by plaintiff, but that the one fixed by the contract was to control. Whatever may be the field of operation of this clause of the contract, we are confident that it has no application to the facts of this case. It would seem that its purpose is merely to fix the maximum value of the live stock named in it to be paid by the carrier in the event they are destroyed in transportation through its negligence. The judgment must be reversed on both appeals.

Reversed and remanded.

McCLELLAN, C. J., SIMPSON and ANDERSON, J.J., concurring.