HENDERSON et al. v. WELLS FARGO &
CO. EXPRESS. (No. 8846.)

(Court of Civil Appeals of Texas. Ft. Worth.
Nov. 1, 1919. Rehearing Denied
Jan. 10, 1920.)

1. CARRIERS ⬳158(3)—LIABILITY FOR NEG-
LIGENCE IS LIMITED TO DECLARED VALUE.

Under the rule of the Interstate Commerce
Commission and the official express classifica-
tions filed with that commission by the express
companies of the United States, providing for
a limitation of liability based on the declared
value of the shipment, the liability for ordinary
negligence is limited to the declared value, or,
if no value is declared, to the sum of $50.

2. COURTS ⬳97(5) — DECISIONS OF UNITED
STATES SUPREME COURT REGARDING INTER-
STATE SHIPMENTS ARE CONTROLLING.

The decisions of the United States Supreme
Court are controlling on a state court in deter-
mining whether a carrier's liability for the loss
of an interstate shipment is limited to the de-
clared value.

3. CARRIERS ⬳158(3)—LIMITATION OF LIA-
BILITY APPLIES TO EMBEZZLEMENT BY EM-
PLOYÉ.

A limitation of liability in an interstate
contract of shipment to the declared value ap-
plies to a case of embezzlement by an employé
of the carrier as distinguished from a conversion
by the carrier itself.

4. CARRIERS ⬳158(3)—LIMITATION OF LIA-
BILITY APPLIES TO GROSS NEGLIGENCE.

A limitation of liability to the declared value
in an interstate contract of shipment applies
to gross, wanton, and willful negligence, making
the theft or embezzlement of the shipment by an
employé of the carrier easy of accomplishment
and difficult of detection.

5. CARRIERS ⬳155—LIMITATION OF LIABILI-
TY IS EFFECTIVE THOUGH GOODS ARE SHIPPED
WITHOUT AUTHORITY.

The owner of goods shipped in interstate
commerce under a limited liability contract, and
embezzled by the carrier's employé, cannot avoid
the limitation of liability by proving that the
shipment and assent to the limitation were
without her consent, as the carrier's liability
arises only from the contract.

Appeal from Tarrant County Court; George
E. Hosey, Judge.

Action by Mrs. Joella D. Henderson and
others against Wells Fargo & Co. Express.
From a judgment for plaintiffs for partial
relief only, they appeal. Affirmed.

Capps, Cantey, Hanger & Short, of Ft.
Worth, for appellants.
Thompson, Barwise, Wharton & Hiner, of
Ft. Worth, for appellee.

BUCK, J. Mrs. Joella D. Low, subsequent-
ly intermarried with W. H. Henderson, sued
the Wells Fargo & Co. Express for the alleged
value of a pair of diamond earrings shipped
from Ft. Worth, Tex., to Oklahoma City, Okl.
Plaintiff alleged that defendant had failed
and refused to deliver said earrings, and that
through its duly authorized agents entrusted
with the care and safe-keeping of the same,
in the course of their employment, stole and
embezzled said earrings from the plaintiff;
or that, if defendant did not through its
agents steal and embezzle the same, defend-
ant, through its duly authorized agents
charged with the safe-keeping of said ear-
rings, in the course of their employment, was
guilty of gross, wanton, and willful negli-
gence, which resulted in their loss or theft.

Defendant answered that on May 28, 1915,
the North Texas Trust Company, or one of
its agents, tendered to it for shipment at its
Ft. Worth office a sealed package, and that,
upon being asked as to the value of the con-
tents of the sealed package, the party offer-
ing it for shipment replied that it contained
jewelry and was of the value of $100. De-
fendant further alleged that, relying upon
the information given by said party, it issued
a receipt for said package of jewelry, which
showed that the package contained jewelry
and was of the value of $100, and was re-
ceived from the North Texas Trust Company,
and was consigned to Mrs. J. D. Low, of
Oklahoma City. It further alleged that the
receipt issued by the defendant company con-
tained on its face, in large bold letters, the
following language:

"Company will not pay over $50 in case of
loss or 50 cents per pound on shipments in ex-
cess of 100 pounds, unless a greater value is
declared and higher rate paid."

It was further alleged that said receipt fur-
ther provided:

"In consideration of the rate for carrying said
property which is regulated by the value there-
of and is based upon a valuation of not exceed-
ing fifty dollars for any shipment of 100 pounds
unless a greater value is declared at the time
of shipment, the shipper agrees that the com-
pany shall not be liable in any event for more
than fifty dollars ($50) on any shipment of 100
pounds or less, and for not exceeding fifty cents
per pound on a shipment weighing more than
100 pounds, unless a greater value is stated
herein, and said property is valued at, and the
liability of the company is hereby limited to, the
value above stated, unless a greater value is de-
clared at the time of shipment and stated here-
in, and charge for value paid or agreed to be
paid therefor."

It was further alleged that said receipt
contained in large bold letters the words:

"The company's charge is based upon the val-
ue of the property, which must be declared by
the shipper."

It was further alleged that said receipt
was signed by the agent of the defendant at

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Ft. Worth, and was accepted by the party tendering the package for shipment. It was further alleged that there was in effect at that time the official express classifications, issued by the express companies of the United States, among them being the defendant, and that said express classifications were issued and filed with the Interstate Commerce Commission, and were in force at said time, and governed the carriage of the shipment in question. That said classifications contained the following provisions:

"A uniform express receipt of the form prescribed herein must be given for all matter received. Shippers must be requested to state the nature of the shipment and to declare the value thereof, which value, when given, must be inserted in the uniform express receipt, marked on the package, and entered on the waybill. In the uniform express receipt a phrase is provided reading: 'Value asked and ―― declared.' If shipper declares the value, insert the amount so declared in the blank space. If he declines to do so, write the word 'not' in the blank space. * * *

"The rates governed by this classification are based upon a value of not exceeding $50 on each shipment of 100 pounds or less, and not exceeding 50 cents per pound, actual weight, on each shipment weighing more than 100 pounds, and the liability of the express company is limited to the value above stated, unless a greater value is declared at time of shipment, and the declared value in excess of the value above specified is paid for, or agreed to be paid for, under the schedules of charges for excess value."

"When the value declared by the shipper, or the amount of a C. O. D. exceeds the value of $50 on a shipment weighing 100 pounds or less, or exceeds 50 cents per pound on a shipment weighing more than 100 pounds, the charge therefor will be at the rate of 10 cents on each $100 of such excess or for any fraction of $100."

It was further alleged that the official tariff rate from Ft. Worth to Oklahoma City was 22 cents, provided a value of only $50 was declared. But the tariff provided that, in the event the value of said shipment exceeded the sum of $50, extra charge should be made at the rate of ten cents on each $100 of such excess value, or for any fraction of $100, and that, the party making the tender having declared the value of the package to be $100, the official tariff and required charge therefor was 32 cents; that, if a greater value than $100 had been declared on said shipment, an extra charge of 10 cents would have been made, as provided for in the tariffs referred to; that hence plaintiff in no event could recover from defendant a sum greater than $100, and said amount was tendered, without reservation, as payment of its full liability.

Plaintiff by supplemental petition denied that the North Texas Trust Company, or any one else, had authority from her to execute any contract with defendant, or to deliver said diamond earrings to the defendant for transportation, and that said delivery was wholly and entirely without plaintiff's consent, knowledge, or authority, and likewise was the declaration alleged by defendant to have been made as to the supposed value of the shipment; that said trust company was not acting for plaintiff in any respect. Plaintiff further pleaded that, before the package was lost or stolen, she informed the defendant, through its agent at Oklahoma City, that she had received notice from Ft. Worth that a package containing valuable jewelry had been shipped to her by express, and informed said agent of the defendant that she would be out of the city for a day or two, including Saturday, May 29, 1915, and that there would be no one at the house where she was visiting to receive the package, as they were all going away, and especially instructed the defendant to hold the package at the express office, and not attempt to deliver the same at her house, as it was very valuable, and she would call at the office and get the package upon her return; that notwithstanding such information and specific instructions given to the defendant by the plaintiff, which put the defendant upon notice of the valuable character of the package, the defendant thereafter violated the instructions of the plaintiff in failing to hold the package at the office until her return, and that the same was wholly lost to the plaintiff by reason of having been stolen or embezzled by defendant through its agents to whom the said package was intrusted and who were handling the same in the course of their employment for defendant, or by reason of the gross, wanton, and willful negligence of defendant through its agents.

The cause was submitted to a jury upon special issues. The jury found in answer thereto:

(1) That one of the drivers of the defendant to whom the package had been intrusted for delivery had embezzled said diamonds.

(2) That defendant, while in possession of said shipment, was guilty of gross, wanton, and willful negligence which directly and proximately resulted in the loss or theft of the diamonds.

The evidence showed that the diamonds were of a reasonable market value of $375. Plaintiff moved for judgment in said amount, upon the verdict of the jury upon the special issues submitted. But the court rendered judgment for the plaintiff in the sum of $100 only, with the costs taxed against plaintiff from the date of the tender into court. From this judgment the plaintiff has appealed.

It may be said that the evidence sustains the findings of the jury upon each of the two issues submitted. Neither party has challenged the sufficiency of the evidence to sustain these findings. The disposition of

this appeal turns upon the correct answers to three questions of law presented, to wit:

(1) Admitting the negligence of defendant, is plaintiff's recovery limited to the declared value of the package mentioned in the receipt?

(2) If it be admitted that for ordinary negligence on the part of the carrier such a rule is established by the authorities, does it apply where the evidence shows and the jury has found that the carrier was guilty of gross, wanton, and willful negligence?

(3) Would the fact that plaintiff denied in her pleadings and in her testimony that the North Texas Trust Company had any authority to ship said goods, or to enter into any contract for her, or binding upon her, limiting the liability of the carrier, affect the question of defendant's liability?

[1] In view of the Interstate Commerce Commission Rule 13, sections (a), (b), and (c), for the test of which see Wells Fargo & Co. Express v. Bollin, 212 S. W. 283, unless a shipper declares a value greater than the basic rate, and pays the excess rate for the higher valuation, the liability of the express company is limited to such lower rate, and that even though the contract is oral and nothing is said about rates and values, and where all express charges are to be paid at destination. In Ry. Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901, decided April, 1914, the Supreme Court of the United States held that where the carrier has published tariffs on file with the Interstate Commerce Commission, graduating the rates according to declared value and limiting the carrier's liability accordingly, the liability of such carrier as to interstate shipments is limited to the agreed value, and, though a special contract for such interstate shipment be made without limitation of the carrier's liability to an agreed value, that the shipper as well as the carrier is bound to take notice of the filed tariff rates, and that so long as they remain operative they are conclusive as to the rights of the parties, in the absence of facts and circumstances showing an attempt at rebating or false billing. This case has been cited with approval by the United States Supreme Court in a number of cases since, and the rule there announced has been adhered to. Pierce Co. v. Wells Fargo & Co., 236 U. S. 278, 35 Sup. Ct. 351, 59 L. Ed. 576; Southern Ry. Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836; Ga., Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948. In Pierce Co. v. Wells Fargo & Co., supra, Justice Day, speaking for the court, says:

"That contracts for limited liability, when fairly made, do not contravene the settled principles of the common law preventing the carrier from contracting against its liability for loss by negligence (New York C. R. Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627, 10 Am. Neg. Cas. 624), was settled by this court in what is known as the Hart Case, 112 U. S. 331, 28 L. Ed. 717, 5 Sup. Ct. Rep. 151. In that case a recovery limited to $1,200 for six horses, one shown to be worth $15,000, and the others from $3,000 to $3,500 each, was sustained upon the principle that the contract did not relieve against the carrier's negligence, but limited the amount that might be recovered for such negligence, and it was there held that such contracts, when fairly made, did not contravene public policy. That case has been frequently followed since, and its doctrine applied in construing limited liability contracts in connection with the Carmack Amendment to the Interstate Commerce Act, in a series of cases beginning with the Adams Exp. Co. v. Croninger, 226 U. S. 491, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, 33 Sup. Ct. Rep. 148. See, in this connection, Wells F. & Co. v. Neiman-Marcus Co., 227 U. S. 469, 57 L. Ed. 600, 33 Sup. Ct. Rep. 267; Kansas City Southern R. Co. v. Carl, 227 U. S. 639, 57 L. Ed. 683, 33 Sup. Ct. 391; Missouri, K. & T. R. Co. v. Harriman, 227 U. S. 657, 57 L. Ed. 690, 33 Sup. Ct. Rep. 397; Chicago, R. I. & P. R. Co. v. Cramer, 232 U. S. 490, 58 L. Ed. 697, 34 Sup. Ct. Rep. 383; Boston & M. R. Co. v. Hooker, 233 U. S. 97, 58 L. Ed. 868, L. R. A. 1915B, 450, 34 Sup. Ct. Rep. 526 [Ann. Cas. 1915D, 593]; Atchison, T. & S. F. R. Co. v. Robinson, 233 U. S. 173, 58 L. Ed. 901, 34 Sup. Ct. Rep. 556."

In the case of Pacific Express Co. v. Rudman, 145 S. W. 268, the Court of Civil Appeals for the Sixth District held that, in the absence of an express contract limiting a carrier's liability for an interstate shipment, the owner would not be denied a recovery for the full value of the loss because the carrier did not charge the full rate. A writ of error was denied by our state Supreme Court, but on appeal to the United States Supreme Court (234 U. S. 752, 34 Sup. Ct. 776, 58 L. Ed. 1577) the judgment was reversed, under the authority of Ry. Co. v. Robinson, supra, and Ry. Co. v. Carl, 227 U. S. 639, 652, 57 L. Ed. 683, 688, 33 Sup. Ct. Rep. 391.

[2] Since the questions of law presented in this appeal arise out of an interstate shipment, the decisions of the United States Supreme Court are controlling upon the state courts. Hence, though much authority to the contrary may be found in the holdings of our own Supreme Court and of the courts of last resort in many other states, yet we feel constrained to hold as to ordinary negligence, at least, the liability of the carrier is limited to the declared value of the shipment; and in case no value was declared by the shipper, or under his authority, that the liability of the carrier is limited to that prescribed under the basic or primary rate provided in the schedule of the tariffs filed with the Interstate Commerce Commission.

As to the second question presented, we must likewise be controlled by the construction placed upon contracts of this character

by the United States Supreme Court. There is much authority among our state courts sustaining appellant's contention that, conceding that the decisions by the United States Supreme Court have established the right of the express company in this case, by agreement fairly made, in consideration of the reduced rate, to limit the amount to be recovered in case of loss through failure to use ordinary care to a stipulated amount, that such limitation does not obtain where the carrier, as here is shown, is guilty of gross, wanton, and willful negligence, or where it is shown that the shipment has been converted by the agent of the carrier to his own use and benefit in the way of theft or embezzlement. Supporting this contention, appellant cites Western Union Tel. Co. v. Schoonmaker, 181 S. W. 263, by the El Paso Court of Civil Appeals; St. L., M. & S. Ry. Co. v. Wallace, 176 S. W. 764; Adams Express Co. v. Berry & Whitmore Co., 35 App. D. C. 208, 31 L. R. A. (N. S.) 309; Central Ry. Co. v. Chicago Portrait Co., 122 Ga. 11, 49 S. E. 27, 106 Am. St. Rep. 87; Southern Ry. Co. v. Webb, 143 Ala. 304, 29 South. 267, 111 Am. St. Rep. 45, 5 Ann. Cas. 97. As expressive of the views contained in decisions of state courts to the effect that the limited liability of the carrier does not obtain in the case of gross negligence or of conversion by the employés or agents of the carrier, may be noted the language used by the District of Columbia Court of Appeals in the case of Adams Express Co. v. Berry & Whitmore Co., supra, to wit:

"It is evident that the only way in which a carrier may be relieved from its common-law obligation to pay the full value of goods lost through its negligence is by means of a special contract with the shipper, as above noted. It is also clear, according to the ordinary rules of construction, that such relief is only to the extent named in that contract. New York C. R. Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627. Is it possible for the carrier to extend this doctrine of contractual limitation of liability to cover cases where the goods are converted or embezzled by it? We think not. So great would be the opportunity for fraud that public policy will not suffer a practice so manifestly calculated to invite it. That the shipper, in a particular instance, might be willing to make such a concession, does not alter the rule; it is not within the power of the individual to barter away the right to protection inherent in the general public. In discussing this question, the court, in the case of The New England [D. C.] 110 Fed. 415, said: 'It should be added, further, that it is doubtful if any limitation which seeks to protect a company, not from the negligence, but from the theft or conversion, of its servants, is consonant with public policy.' Story, in his works on Bailments, * * * says: 'In respect to cases of loss by fraud, there is a salutary principle, belonging both to our law and the civil law. It is that the bailee can never protect himself against responsibility for losses occasioned by his own fraud; nay, not even by a contract with the bailor that he shall not be responsible for such losses, for the law will not tolerate such indecency and immorality that a man shall contract to be safely dishonest.' * * * Would it be possible for a carrier, after receiving for transportation goods worth $1,000, to embezzle them, and then plead, as a limitation of its liability, the fact that the shipper had not stated their value to be more than $50? In other words, can a carrier engaged in business of a public nature be permitted to justify a conversion of goods intrusted to it, on the ground that its liability is fixed by contract? Such would be the absurd result were appellant's contention carried to its logical conclusion."

[3] From a careful examination of the authorities, both state and federal, upon this question, we conclude that much of the disagreement in the holdings has been occasioned by the failure of those courts adhering to the rule that a carrier cannot be protected in its limited liability claim where the facts show that the shipment was converted through the dishonesty, and to their own use and benefit of the agents or employés of the carrier, to distinguish between a conversion by the carrier itself and a conversion by the employés of the carrier without the knowledge and consent of the carrier. In Ry. Co. v. Wallace, supra, the Court of Civil Appeals for the Amarillo District held, we think properly, that a judgment for the full value of the goods lost should be sustained. In that case the evidence showed that the railway company had converted the goods to its own use, the shipment having been misrouted through negligence of the defendant and the goods having been sold for storage charges. As said by Hutchinson in his work on Carriers, vol. 1 (3d Ed.), § 432, p. 435:

"Where the carrier has converted the goods, he will be deemed to have thereby abandoned the contract of shipment, and he cannot thereafter insist on a stipulation that his liability shall be limited to a certain sum at which the goods are valued," etc.

We believe this doctrine to be sound and in line with all authority, both state and federal. So in Ry. Co. v. Chicago Portrait Co., supra, the action was for conversion by the carrier itself. Perhaps, also, in the same category is the case of Southern Ry. Co. v. Webb, supra, for there plaintiff sued the carrier for an improper delivery of the shipment. But in Adams Express Co. v. Berry & Whitmore, supra, the evidence disclosed an embezzlement by an employé of the carrier, as shown in the instant case. However, the District of Columbia Court of Appeals, in the course of its opinion, used argument and cited authorities supporting its conclusion upon the apparent theory that the conversion alleged by plaintiff was by the carrier itself. At least, said decision did not

attempt to distinguish between a case of embezzlement by an employé and a conversion by the carrier. In Ry. Co. v. Blish Milling Co., supra, the United States Supreme Court, in an opinion by Mr. Justice Hughes, says:

"There is, however, a further and controlling consideration. We are dealing with a clause in a bill of lading issued by the initial carrier. The statute casts upon the initial carrier responsibility with respect to the entire transportation. The aim was to establish unity of responsibility, * * * and the words of the statute are comprehensive enough to embrace responsibility for *all losses* [emphasis ours] resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation, which, as defined in the federal act, includes delivery." .

In Moore v. Duncan, 237 Fed. 780, 150 C. C. A. 534, the Circuit Court of Appeals for the Sixth Circuit, referring to the case of Adams Express Co. v. Berry & Whitmore, supra, and the conclusion there reached that the limited liability clause did not cover cases where the goods were converted or embezzled by an employé of the carrier, and that such conversion or embezzlement by the employé amounted to a conversion by the carrier itself, said:

"We are unable to agree with the holding in that case as applied to the instant case. It overlooks the fact that it was entirely competent at common law, and no less so under the existing federal statutes, to limit liability for loss not within the carrier's control. Concededly it would not be violative of public policy to contract for limited liability in case of theft by a stranger. We can see no valid ground for holding such contract invalid in case of theft by an employé for his own sole purposes and against the interests and without the connivance of the carrier. Theft of goods in tranportation, and in the possession of the carrier for such purpose, is a theft from the carrier itself. Theft, under the circumstances stated, whether by a stranger or by an employé of the carrier, involves no misfeasance or lack of faithfulness on the part of the carrier. Such negligence of the carrier as may be involved in making theft possible is manifestly covered by the stipulation."

See, also, Windmiller v. Railway, 52 Wash. 613, 101 Pac. 225; D'Utassy v. Barrett, 219 N. Y. 420, 114 N. E. 786.

In the case at bar the defendant carrier has not been benefited by the loss of appellant's diamonds, which the jury found were embezzled by the driver of the carrier. On the contrary, the defendant has been damaged by reason of the embezzlement in the sum of $100, which it tendered into court and for which judgment was given. From the foregoing authorities, and others that might be cited, we conclude that with reference to interstate shipments, the questions of law arising out of which are controlled by federal judicial authority, the rule of opinion is that the fact that goods in shipment were embezzled or stolen by employés of the carrier, without the consent or connivance of the carrier itself, does not impair the validity of the limited liability stipulation.

[4] The next question presented is as to the tenability of such defense when gross, wanton, and willful negligence is shown on the part of the carrier. To confine the question more particularly to the issue presented in the instant case by pleading and evidence, it is for us to decide whether the limitation of liability should apply where it is shown that the theft or embezzlement of the employé was, if not induced, at least rendered easy to accomplish and more difficult of detection through the gross and wanton negligence of the carrier. The evidence shows that after plaintiff had notified the agent at defendant's office of the expected arrival of the package, and had made a request that no attempt to deliver the same be made, but that it be allowed to remain in the office until her return from her expected trip of several days, that the agent at Oklahoma City caused the package to be delivered to a driver on Saturday, and that no inquiry was made by the company as to whether or not such delivery had been made or the package returned to the company's office until Sunday or Monday thereafter, when the company made an investigation and received a report from the driver that he had left his car on Saturday night late at a garage, and had thrown the valuable package under the seat among some tools, and on his return to his wagon on Sunday he found the package opened and the diamonds gone.

The evidence further shows that the company was provided with, and it was customary to use, when valuable packages were delivered, a safe to be placed on the wagon and in which such packages were locked; the auto delivery was also provided with a cage of heavy wire screening, and such cage had a door which was provided with a lock and key, and the key was generally in the possession of the driver; that the driver had orders to carry a safe on his wagon, but whether he had such safe on the wagon on the day he received the package in question, or whether the cage was locked, is not certain from the evidence. The rules of the company required that it was the duty of the driver to return undelivered valuable packages to the office at the close of the day, where they were placed in a safe, and that the driver, under the rules of the company, was not permitted to retain packages in his possession over night. This package was handled through the money department of the company. .

The case of Donlon Bros. v. So. Pac. Ry. Co., 151 Cal. 763, 91 Pac. 603, 11 L. R. A. (N. S.) 811, 12 Ann. Cas. 1118, is cited by

appellee to sustain the contention that the limited-liability rule applies even as against gross negligence on the part of the carrier. This decision seems to be one of the leading cases by those state courts sustaining such rule, and the opinion quotes from Hart v. Ry. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, heretofore mentioned, and many other United States court decisions. The California decision was with reference to an intrastate shipment, but the Civil Code of California provides that the obligation of a common carrier may be limited by special contract. However, if we were permitted to decide this question upon a mere weight or preponderance of the judicial expression from the courts of last resort in the various state jurisdictions, and without reference to a statutory provision similar to that of California, we would be inclined to hold that the weight of such authority is counter to the conclusion reached by the Supreme Court of that state. But this is a federal question, which must be determined by the decisions of the Supreme Court of the United States, if any authoritative announcements have been made by such courts, and, if this court has not determined definitely the question, we may rely on the decisions of subordinate federal courts for guidance. The negligence of the carrier in the instant case, so far as it contributed to the loss, consisted of acts of commission and omission tending to make easy the commission of the crime of embezzlement on the part of the driver. In Moore v. Duncan, supra, the United States Circuit Court of Appeals for the Sixth Circuit, of which court Judge William R. Day, who delivered the opinion in the case of A., T. & S. F. Ry. Co. v. Robinson, supra, is associate justice, this very question was presented, and the court held that "such negligence of the carrier as may be involved in making a theft possible is manifestly covered by the stipulation." Also the language used in Ry. Co. v. Blish Milling Co., supra, to the effect that the parties to an interstate shipment cannot waive the terms of the contract under which the shipment was made pursuant to a federal act, nor can the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations, is apparently in point here. Hence we conclude that the contention of appellant that the rule of limited liability of a carrier does not apply where gross negligence is shown must be overruled.

[5] As to the last contention, to wit, that the plaintiff below was not bound by the stipulation in the contract of shipment, or by any declaration of value made by the North Texas Trust Company or its agent, who delivered the package to the defendant for shipment, we have concluded that the assignment embracing this contention must likewise be overruled. Liability of the defendant as a carrier to plaintiff rested, if at all, upon its contract of shipment. If plaintiff was entitled to recover in any amount against defendant in this action, it was by reason of the contract made for plaintiff's benefit with the carrier, and plaintiff could not in the same breath deny the authority of the shipper to make a contract of shipment for her, and also seek to recover damages by reason of the obligation assumed by the carrier under such contract. If no declaration of value had been made by the party who delivered the goods for shipment to the defendant carrier, plaintiff would have been limited to $50 recovery instead of $100. Wells Fargo & Co. Express v. Bollin, supra, and cases there cited. If the plaintiff did not, in fact, authorize the shipment by the agents of the trust company, and such act was done under such circumstances as would have rendered the trust company liable, she could have made such company a party to this suit. But she has elected to rely on the contract, and therefore must be limited to its terms.

All assignments are overruled, and the judgment is affirmed.